201 P.3d 342 (2009)
STATE of Washington, Respondent,
v.
Walter Moses DOUGHTY, Appellant.
No. 26573-1-III.
Court of Appeals of Washington, Division 3.
February 5, 2009.
*343 Janet G. Gemberling, Gemberling & Dooris PS, Seattle, WA, for Appellant.
Mark Erik Lindsey, Spokane County Prosecuting Attorneys, Spokane, WA, for Respondent.
SWEENEY, J.
¶ 1 The defendant here appeals the trial court's refusal to suppress drug evidence seized after he visited a drug house at 3:20 a.m. for a two-minute-long visit. We conclude that the circumstances provided ample grounds for a Terry[1] stop and affirm the trial judge's refusal to suppress the drug evidence.

FACTS
¶ 2 Officer Derek Bishop was watching a particular house for drug activity because informants identified it as a drug house. At 3:20 a.m., Officer Bishop saw a car park in front of the house. The driver, Walter Doughty, entered the house and returned to *344 his car in less than two minutes. Mr. Doughty drove away from the house. Officer Bishop suspected drug activity based on the time of day, complaints of drug activities from neighbors, the fact that police had identified the house as a drug house, and the short duration of the visit. He stopped the car.
¶ 3 Officer Bishop ran a records check and discovered Mr. Doughty's license was suspended. He arrested Mr. Doughty and searched his car incident to arrest. The officer found a pipe and scale with methamphetamine residue. Police also found a baggy of methamphetamine in Mr. Doughty's shoe during the booking process.
¶ 4 Mr. Doughty moved to suppress the drug evidence. The trial judge concluded that the officer had a reasonable suspicion of criminal activity "[b]ased on the time of day, the designation by the police of the house as a drug house, the neighbors' complaints and the defendant's actions." Clerk's Papers (CP) at 14. The State and Mr. Doughty stipulated to the facts for trial, and the court found Mr. Doughty guilty of one count of possession of methamphetamine.

DISCUSSION

TERRY STOP
¶ 5 Mr. Doughty assigns error to the trial judge's conclusion that police had sufficient grounds to warrant a Terry stop. The court concluded that "the officer had a reasonable suspicion that the defendant was involved in criminal activity." CP at 14. We review a conclusion of law de novo. State v. Chang, 147 Wash.App. 490, 195 P.3d 1008, 1010 (2008).
¶ 6 Significantly, Mr. Doughty does not assign error to any of the trial court's findings of fact from the suppression hearing, including that the house had been identified as a drug house by police or that police were "watching a house, not a business open for legitimate activity." CP at 14. We accept unchallenged findings of fact following a CrR 3.6 suppression hearing as verities on appeal and will not review them. State v. Hill, 123 Wash.2d 641, 644-47, 870 P.2d 313 (1994).
¶ 7 A police officer may conduct an investigatory stop based on less than probable cause if the officer has a well-founded suspicion of criminal activity based on specific and articulable facts. State v. Glover, 116 Wash.2d 509, 514, 806 P.2d 760 (1991). The level of articulable suspicion necessary to support an investigative detention is "a substantial possibility that criminal conduct has occurred or is about to occur." State v. Kennedy, 107 Wash.2d 1, 6, 726 P.2d 445 (1986). We decide the "reasonableness" of the officer's suspicion based on the totality of the circumstances, including the officer's training and experience, the location of the stop, and the conduct of the person detained. Glover, 116 Wash.2d at 514, 806 P.2d 760.
¶ 8 The trial court concluded that the stop in this case was justified because of the early morning hour, the designation by the police of the house as a drug house, the neighbors' complaints, and Mr. Doughty's "actions." CP at 14. Mr. Doughty argues that the State provided no reliable information to support its assertion that the house on Gardner was a drug house, noting that the record fails to show any efforts by law enforcement to determine the identity of the informants or verify the accuracy of their complaints. But that misses the essential point on appeal here. The house had already been identified as a drug house, and Mr. Doughty does not challenge that finding of fact. Indeed, the finding appears to us to be well supported by the record, in any event.
¶ 9 So the question before us is whether the following facts give rise to a reasonable suspicion of criminal activity sufficient to support a Terry stop:
 A house identified as a drug house;
 Mr. Doughty stops at the drug house;
 he is there for only two minutes; and
 he visits the drug house at 3:20 in the morning.
¶ 10 The stop here was a seizure. State v. Santacruz, 132 Wash.App. 615, 619, 133 P.3d 484 (2006). The question is whether it was reasonable given these circumstances. Id. The stop is reasonable if the State can point to "`specific and articulable *345 facts giving rise to a reasonable suspicion that the person stopped is, or is about to be, engaged in criminal activity.'" Id. (internal quotation marks omitted) (quoting State v. Villarreal, 97 Wash.App. 636, 640, 984 P.2d 1064 (1999)). The stop must be based on more than the officer's hunch. Id. The Washington Supreme Court has held a stop valid under similar circumstances. Kennedy, 107 Wash.2d at 8-9, 726 P.2d 445 (Terry stop after police see defendant leave a suspected marijuana dealer's house and, before police reached the car, defendant leaned forward in his car as if to place something under the driver's seat). And we conclude there are sufficient grounds here to justify the stop.
¶ 11 We have required more than simple presence in a high crime area or physical proximity to a suspected drug dealer to justify a stop. In State v. Richardson, a patrolling officer saw the appellant walking in a "high drug activity" neighborhood of Yakima with a person the officer suspected of "running drugs." 64 Wash.App. 693, 694-95, 825 P.2d 754 (1992). The officer stopped both men, questioned them, and examined the contents of the appellant's pockets. Id. at 695, 825 P.2d 754. The primary question in Richardson was whether the search was consensual. Id. at 696, 825 P.2d 754. Here, the State does not argue that the search of Mr. Doughty was consensual because it clearly was not. The Richardson court also addressed the question whether the Yakima police had reasonable grounds to seize the defendant. Id. The court concluded that presence in a high crime area and proximity to a suspected drug runner was not enough to support the necessary suspicion for the stop. Id. at 697, 825 P.2d 754.
¶ 12 Here, however, Officer Bishop's suspicion was supported by more than Mr. Doughty's proximity to a drug dealer or his mere presence in a certain neighborhood that supported the officer's suspicion. It was supported instead by Mr. Doughty's own suspicious behavior. He drove to a drug house at 3:20 a.m., entered the house for a mere two minutes, and then left. We conclude that this scenario, in this setting, is legally sufficient to support with substantial probability the officer's reasonable suspicion that criminal conduct had occurred.

PRETEXTUAL STOP
¶ 13 Mr. Doughty also contends that the stop was a pretextual stop under article I, section 7 of the Washington Constitution. State v. Ladson, 138 Wash.2d 343, 349, 979 P.2d 833 (1999). We need not address that issue since we conclude the officer had ample reason to stop Mr. Doughty based on factors other than a traffic infraction; and, in fact, the officer never claimed that he stopped Mr. Doughty for a traffic infraction.
¶ 14 We affirm the judgment of the trial court.
I CONCUR: BROWN, J.
SCHULTHEIS, C.J. (dissenting).
¶ 15 I disagree with the majority's conclusion that Officer Derek Bishop had a sufficient basis for an investigatory stop. Therefore, I respectfully dissent.
¶ 16 Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, warrantless searches and seizures are per se unreasonable and the State bears the burden of demonstrating that the warrantless search falls within one of the few narrow exceptions to the general rule. State v. Williams, 102 Wash.2d 733, 736, 689 P.2d 1065 (1984). Under the Terry[1] stop exception, police officers may briefly detain a person if they "have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). When determining whether police have reasonable suspicion sufficient to justify a Terry stop, we apply the totality of the circumstances test. State v. Glover, 116 Wash.2d 509, 514, 806 P.2d 760 (1991) (citing Terry, 392 U.S. at 25-26, 88 S.Ct. 1868). Evaluated against this standard, I conclude that the facts known to Officer Bishop at the time he stopped Walter Doughty fall short of reasonably indicating that Mr. Doughty was engaged at the time in criminal activity.
*346 ¶ 17 The majority identifies the following facts to justify the stop: (1) a house identified by law enforcement as a drug house, (2) Mr. Doughty's two-minute visit at that house, and (3) the early morning hour. The majority asserts that State v. Kennedy, 107 Wash.2d 1, 726 P.2d 445 (1986) supports its conclusion that the stop was justified, but Kennedy is distinguishable. In that case, in addition to observing the defendant leave a known drug house, police had reliable information from an informant that the defendant regularly purchased marijuana from the owner of the drug house and that he only went to that particular house to buy drugs. Id. at 3, 726 P.2d 445. Police also saw the defendant lean forward in his car as if placing something on the front seat.
¶ 18 Here in contrast, a police officer simply saw a person briefly enter a drug house at an early morning hour. We have previously found similar circumstances insufficient justification for a Terry stop. In State v. Gleason, 70 Wash.App. 13, 851 P.2d 731 (1993), for example, we held that a stop was not justified where the defendant was seen leaving an apartment complex with a history of drug sales. In reversing the trial court's denial of the suppression motion, we reasoned, "this was the first time the defendant had been seen in the area, the officers did not know what occurred inside the apartment and neither officer saw him involved in the purchase of drugs ..., there was no evidence Mr. Gleason was acting suspiciously, [and] he was not carrying any unusual objects." Id. at 18, 851 P.2d 731 (citation omitted).
¶ 19 Furthermore, in State v. Richardson, 64 Wash.App. 693, 825 P.2d 754 (1992), we held that a person's presence in a high crime area does not give rise to a reasonable suspicion to stop him. In Richardson, the defendant was observed walking at 2:30 a.m. in an area known for its high drug activity in the company of a person suspected of drug dealing. Id. We held that the stop was improper, noting that at the time of the stop, the officer "knew only that Mr. Richardson was in a high crime area, late at night, walking near someone the officer suspected of `running drugs'. He had not heard any conversation between the men and had not seen any suspicious activity between them." Id. at 697, 825 P.2d 754 (emphasis added).
¶ 20 The majority acknowledges Richardson, but finds our case distinguishable because it was "Mr. Doughty's own suspicious behavior" that supported the officer's suspicion. Majority at 345. But what is the suspicious activity here? Officer Bishop did not observe any activities inside the house, see Mr. Doughty make contact with anyone, see him with unusual objects, or overhear any conversation. Based on our own precedent, the circumstances here do not rise to the level of articulable suspicion necessary to justify an investigatory stop. Accordingly, I would reverse the judgment of the trial court.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).