239 P.3d 573 (2010)
STATE of Washington, Respondent,
v.
Walter Moses DOUGHTY, Petitioner.
No. 82852-1.
Supreme Court of Washington, En Banc.
Argued May 6, 2010.
Decided September 23, 2010.
*574 Janet G. Gemberling, Gemberling & Dooris P.S., Spokane, WA, for Petitioner.
Mark Erik Lindsey, Spokane County Prosecuting Attorney, Spokane, WA, for Respondent.
SANDERS, J.
¶ 1 Late one night petitioner Walter Moses Doughty approached a suspected drug house, stayed for two minutes, then drove away. A police officer who observed Doughty's approach and departure stopped Doughty on suspicion of drug activity. During this investigative seizure the officer ran a records check and, based on the results, arrested Doughty for driving with a suspended license. Police found methamphetamine during a vehicle search incident to arrest. Doughty argues the investigative seizure was unlawful. We agree, and we reverse the Court of Appeals.

FACTS
¶ 2 At 3:20 a.m. on August 14, 2007, Officer Derek Bishop of the Spokane Police Department observed Doughty park his car, approach a house, return to his car less than two minutes later, and drive away. Bishop did not see any of Doughty's actions at the house, or even if Doughty interacted with anybody there. Neighbors had previously "made numerous complaints of large quantities of short stay traffic" at the house, prompting police to identify it as a "drug house." Clerk's Papers at 45. Nothing in the record indicates that police based this suspicion on anything other than neighbor complaints, such as actual evidence of drugs, controlled buys, reports of known drug users or dealers frequenting the house, and so forth.
¶ 3 After the two-minute visit, Bishop stopped Doughty "for the suspicion of drug activity." Id. Bishop ran Doughty's license through a license check and learned he was driving with a suspended license. Bishop arrested Doughty for the license offense, then searched Doughty's car incident to arrest. Bishop discovered a glass pipe that field-tested positive for methamphetamine. Bishop re-arrested Doughty for possession of a controlled substance and transported him to jail. During booking, officers found a plastic baggie, which contained a crystal substance, in Doughty's shoe. The substance also field-tested positive for methamphetamine.
¶ 4 At trial Doughty moved to suppress evidence obtained as a result of an unlawful investigative detention. The trial court denied the motion. Following a bench trial on stipulated facts, the trial court found Doughty guilty of possession of a controlled substance (methamphetamine). The court sentenced him to 18 months' incarceration. Doughty appealed, and the Court of Appeals affirmed the conviction in a split decision. State v. Doughty, 148 Wash.App. 585, 201 P.3d 342 (2009). Doughty sought discretionary review in this court, which we granted. 166 Wash.2d 1019, 217 P.3d 782 (2009).

ANALYSIS
¶ 5 We must decide whether a person's two-minute visit to a suspected drug house at 3:20 in the morning constitutes grounds for an investigative seizure. In its conclusions of law, the trial court determined Bishop did not violate Doughty's constitutional rights. We review conclusions of law de *575 novo. State v. Gatewood, 163 Wash.2d 534, 539, 182 P.3d 426 (2008).
¶ 6 The Fourth Amendment[1] to the United States Constitution protects against unlawful search and seizure. Article I, section 7[2] of the Washington Constitution protects against unwarranted government intrusions into private affairs. We have held that warrantless seizures are per se unreasonable, and the State bears the burden of demonstrating that a warrantless seizure falls into a narrow exception to the rule. State v. Williams, 102 Wash.2d 733, 736, 689 P.2d 1065 (1984). These exceptions are "`jealously and carefully drawn.'" Id. (quoting Arkansas v. Sanders, 442 U.S. 753, 759, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979)). The Terry stopa brief investigatory seizureis one such exception to the warrant requirement. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A Terry stop requires a well-founded suspicion that the defendant engaged in criminal conduct. Id. at 21, 88 S.Ct. 1868; State v. Garvin, 166 Wash.2d 242, 250, 207 P.3d 1266 (2009). "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21, 88 S.Ct. 1868.
¶ 7 A Terry stop must be reasonable. State v. Kennedy, 107 Wash.2d 1, 4, 726 P.2d 445 (1986). When reviewing the merits of an investigatory stop, a court must evaluate the totality of circumstances presented to the investigating officer. State v. Glover, 116 Wash.2d 509, 514, 806 P.2d 760 (1991) (citing United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). The State must show by clear and convincing evidence that the Terry stop was justified. Garvin, 166 Wash.2d at 250, 207 P.3d 1266.
¶ 8 A person's presence in a high-crime area at a "late hour" does not, by itself, give rise to a reasonable suspicion to detain that person. State v. Ellwood, 52 Wash.App. 70, 74, 757 P.2d 547 (1988) (citing Terry, 392 U.S. at 21-22, 88 S.Ct. 1868). Similarly, a person's "mere proximity to others independently suspected of criminal activity does not justify the stop." State v. Thompson, 93 Wash.2d 838, 841, 613 P.2d 525 (1980). A traffic stop is a seizure for purposes of constitutional analysis. State v. Ladson, 138 Wash.2d 343, 350, 979 P.2d 833 (1999).
¶ 9 The State argues Bishop had valid grounds for a Terry stop. It cites facts to support the seizure, including (1) law enforcement's identification of the house as a drug house, (2) complaints from neighbors,[3] (3) Doughty visited the house at 3:20 a.m., and (4) his visit lasted less than two minutes. Br. of Resp't at 4-5. These facts fall short of the reasonable and articulable suspicion required to justify an investigative seizure under both the Fourth Amendment and article I, section 7. Police may not seize a person who visits a locationeven a suspected drug housemerely because the person was there at 3:20 a.m. for only two minutes.
¶ 10 The Terry-stop threshold was created to stop police from this very brand of interference with people's everyday lives. The Supreme Court embraced the Terry rule to stop police from acting on mere hunches. "Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction." Terry, 392 U.S. at 22, 88 S.Ct. 1868. On these facts, Bishop acted on a hunch alone.
¶ 11 The State relies on Kennedy, 107 Wash.2d 1, 726 P.2d 445, to support its argument that investigative seizures may rest on grounds amounting to "less than probable *576 cause." Br. of Resp't at 7 (citing Kennedy, 107 Wash.2d at 6, 726 P.2d 445). The State suggests articulable suspicion arises when "there is a substantial possibility that criminal activity has occurred or is about to occur." Id. The officer's suspicion must nevertheless be well-founded (i.e., based on specific and articulable facts that the individual has committed a crime) and reasonable. See Kennedy, 107 Wash.2d at 4-5, 726 P.2d 445; Terry, 392 U.S. at 21, 88 S.Ct. 1868.
¶ 12 Moreover Kennedy is distinguishable. We held the investigative seizure in Kennedy did not violate the defendant's rights. 107 Wash.2d at 13, 726 P.2d 445. However, we emphasized that police formed a reasonable and articulable suspicion to seize the defendant based on detailed information provided by a reliable informant. The informant told police that Kennedy "regularly purchased marijuana [at a suspected drug house], that Kennedy only went [there] to buy drugs, and that Kennedy usually drove either a [green truck or maroon car]." Id. at 3, 726 P.2d 445. The officer observed Kennedy leave the location in the maroon car described by the informant. Id. As the officer signaled Kennedy to pull over, he saw Kennedy make a furtive movement to place something (later discovered to be marijuana) under his seat. Id. These grounds justified the investigative seizure and the officer's vehicle search for a weapon.
¶ 13 In contrast, here Bishop relied only on his own incomplete observations. There was no informant's tip (which was the element we found most persuasive in Kennedy, id. at 6-8, 726 P.2d 445) and no furtive movement. Bishop merely saw Doughty approach and leave a suspected drug house at 3:20 a.m. Bishop had no idea what, if anything, Doughty did at the house. The totality of these circumstances does not warrant intrusion into Doughty's private affairs.
¶ 14 The Court of Appeals below relied upon State v. Richardson, 64 Wash.App. 693, 825 P.2d 754 (1992), to affirm the trial court's denial of Doughty's motion to suppress. See Doughty, 148 Wash.App. at 589-90, 201 P.3d 342. But Richardson finds an investigative seizure improper on arguably less substantial facts than those present here. A police officer observed Richardson walking at 2:50 a.m. with a person whom police suspected of dealing drugs. 64 Wash.App. at 694-95, 825 P.2d 754. The officer stopped both men. The court held the investigative detention to be unlawful. "At the time of the seizure, [the officer] knew only that Mr. Richardson was in a high crime area, late at night, walking near someone the officer suspected of `running drugs'." Id. at 697, 825 P.2d 754. In Richardson, then, consorting with a suspected drug dealer late at night in a high-crime area did not justify a Terry stop.
¶ 15 The facts of Doughty's case are similar, but even less damning. Here, police never saw any of Doughty's interactions at the house. He may not have even interacted with anybody there. As far as Officer Bishop knew, maybe Doughty knocked and nobody answered. Maybe Doughty even had the wrong house. The two-minute length of time Doughty spent at the housealbeit a suspected drug houseand the time of day do not justify the police's intrusion into his private affairs.
¶ 16 A more apt analogy rests with State v. Gleason, 70 Wash.App. 13, 851 P.2d 731 (1993). Based on the totality of the circumstances, the Gleason court held it improper to seize a person merely for exiting an apartment complex that had a history of drug sales. Id. at 18, 851 P.2d 731. The court reasoned that "this was the first time the defendant had been seen in the area, the officers did not know what occurred inside the apartment and neither officer saw him involved in the purchase of drugs. Further, there was no evidence Mr. Gleason was acting suspiciously, he was not carrying any unusual objects." Id. (citation omitted). That statement describes the events in Doughty's chronology almost exactly.
¶ 17 Officer Bishop lacked sufficient specific and articulable facts to seize Doughty. No legal basis existed for the Terry stop. If a Terry stop is unlawful, the fruits obtained as a result must be suppressed. See Garvin, 166 Wash.2d at 254, 207 P.3d 1266. "`The exclusionary rule mandates the suppression of evidence gathered through unconstitutional means.'" Id. (quoting State v. Duncan, 146 Wash.2d 166, 176, 43 P.3d 513 (2002)); see *577 also Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Accordingly, suppression of the evidence obtained after the unlawful seizure in this case is proper.
¶ 18 We reverse the Court of Appeals, suppress the evidence against Doughty, and vacate his conviction.
WE CONCUR: CHARLES W. JOHNSON, GERRY L. ALEXANDER, SUSAN OWENS, and DEBRA L. STEPHENS, Justices.
CHAMBERS, J. (concurring).
¶ 19 I agree with the majority that, on the record before us, there were insufficient facts to justify a Terry[1] stop. I write separately to suggest that, in my view, had the record contained more specific facts indicating why this house was designated a "drug house" our analysis might be different. We look at the totality of the circumstances to determine whether an officer was justified in making an investigatory stop. State v. Glover, 116 Wash.2d 509, 514, 806 P.2d 760 (1991). Here, where the only facts suggesting that the house Walter Doughty approached was a drug house are neighbors' complaints of short stay traffic, the totality of the circumstances do not justify the stop.
¶ 20 I respectfully concur.
FAIRHURST, J. (dissenting).
¶ 21 The facts of this case are not in dispute. There is a house that, according to neighbors, receives a high volume of short stay traffic by bicycle, car, and foot every single day. The police, relying on this information, have identified the house as a drug house. One day, an officer sees Walter Moses Doughty go to the house and leave two minutes later. Maybe he was dropping off a borrowed movie, or maybe he was picking up an article of clothing he had previously left behind. One can speculate about a whole myriad of possibilities for almost any given factual scenario. However, the inquiry is not what is conceivable but what is reasonable to suspect, and it is most reasonable to suspect that Doughty was doing what the large quantity of other short stay visitors were likely doing at this house every daybuying drugs. That this event took place at 3:20 a.m. should make these suspicions even more reasonable. Is it enough information for an arrest? No. Is it enough information to stop Doughty and inquire about his actions? Yes. I respectfully dissent.
¶ 22 Article I, section 7 of the Washington State Constitution and the Fourth Amendment to the United States Constitution protect against unreasonable searches and seizures. Generally, warrantless searches are per se unreasonable under both the Fourth Amendment and article I, section 7. State v. Duncan, 146 Wash.2d 166, 171, 43 P.3d 513 (2002) (citing State v. Williams, 102 Wash.2d 733, 736, 689 P.2d 1065 (1984)). However, there are "`a few jealously and carefully drawn exceptions' to the warrant requirement." Id. (internal quotation marks omitted) (quoting Williams, 102 Wash.2d at 736, 689 P.2d 1065). The State bears the burden of showing that a warrantless search or seizure meets such an exception. Id. at 172, 43 P.3d 513.
¶ 23 One of these exceptions is the Terry[1] investigative stop, which allows an officer to briefly stop and detain a person without a warrant when the officer reasonably suspects that the person is engaged in criminal conduct. State v. Day, 161 Wash.2d 889, 895, 168 P.3d 1265 (2007). A Terry stop must be reasonable, and the inquiry is "whether the officer had `specific and articulable facts, which, taken together with rational inferences from those facts reasonably warrant [the] intrusion.'" State v. Kennedy, 107 Wash.2d 1, 5, 726 P.2d 445 (1986) (quoting Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Out of recognition of the fact that a stop is a lesser intrusion than an arrest, the standard of proof required is lower than probable cause, and the officer need only reasonably surmise that there is a "substantial possibility" that criminal conduct has occurred, looking at the totality of the *578 circumstances known to the officer.[2]Id. at 6, 726 P.2d 445.
¶ 24 A review of the Terry facts reveals the divide between how the United States Supreme Court and the majority understand the Terry doctrine. In Terry, an experienced police officer witnessed two men engaging in suspicious activity. 392 U.S. at 5-6, 88 S.Ct. 1868. Specifically, he saw two men repeatedly take turns walking 300 to 400 feet down a sidewalk past a store, peering into the store window, and then turning around and peering in the window again on the way back. Id. After one would complete his turn, the two would confer before the other would start his turn. Id. They repeated this ritual for 10 to 12 minutes before following a third man down the street. Id. Based on his experience, the officer suspected the men were casing the store for a robbery. Id. at 6, 88 S.Ct. 1868. He stopped them, asked them for identification, and frisked two of them for weapons, finding two illegally concealed firearms. Id. at 6-7, 88 S.Ct. 1868. The Court upheld the stop and the frisk. Id. at 8, 88 S.Ct. 1868.
¶ 25 The Court determined that the officer's suspicion was reasonable. Id. at 21-22, 88 S.Ct. 1868. The officer never saw a weapon prior to the seizure, nor did he rely on any informant tips. See id. at 5-7, 88 S.Ct. 1868. Instead, the Court noted that the officer "had observed [the suspects] go through a series of acts, each of them perhaps innocent in itself, but which taken together warranted further investigation." Id. at 22, 88 S.Ct. 1868.
¶ 26 Doughty's case is similar. Here, the police had not seen a drug transaction at the house, nor had officers received tips from informants who claimed to have witnessed actual drug transactions. Instead, officers had "numerous" reports from neighbors that "every[]day" there were "large quantities of short stay traffic" on foot, on bikes, or in cars. Clerk's Papers at 45. A single short stay at a home is not indicative of drug activity, but numerous short stays every day is a telltale sign of drug sales. If Doughty had gone to this house for an hour or two, the situation would be quite different. However, Doughty went for two minutes. Id. The short time indicates a transaction. The fact that Doughty's two minute visit took place at 3:20 a.m. further indicates he engaged in a drug transaction. In short, under the totality of the circumstances, it is reasonable to believe there is a "substantial possibility" that Doughty was engaged in criminal conductthe purchase of drugs. Kennedy, 107 Wash.2d at 6, 726 P.2d 445.
¶ 27 The majority analogizes this case to two cases from the Court of Appeals: State v. Richardson, 64 Wash.App. 693, 825 P.2d 754 (1992) and State v. Gleason, 70 Wash. App. 13, 851 P.2d 731 (1993). Majority at 576-77. In Richardson, a police officer stopped Jerry Ray Richardson because he was "in a high crime area, late at night, walking near" a suspected drug dealer named Tom Gonzales. Id. at 697, 825 P.2d 754. The Court of Appeals correctly determined that this information was insufficient to warrant reasonable suspicion. Id. None of the facts suggested that Richardson had engaged in a transaction with Gonzales. See id. at 694-95, 825 P.2d 754. The officer suspected Gonzales of dealing drugs because he was standing on a street corner and repeatedly *579 approaching vehicles and engaging in conversation with the occupants of those vehicles. Id. at 694, 825 P.2d 754. Richardson's contact with Gonzales did not fit that pattern.
¶ 28 The facts in Gleason are similarly lacking. In Gleason, a man was stopped by police because he was leaving an apartment complex that had a history of drug activity.[3] 70 Wash.App. at 14-15, 851 P.2d 731. The officers did not know how long Gleason had been at the apartment complex nor is it clear that the officers had even identified the apartment from which Gleason had come. Id. at 18, 851 P.2d 731. In short, the officers saw no evidence to suggest that Gleason himself had engaged in a drug transaction. See id.
¶ 29 In contrast to both Richardson and Gleason, here, there is evidence that Doughty's contact with the house was transactional. If one were looking at a suspected drug house for drug transactions, a short stay would be the prime indicator that a drug sale had occurred inside. A short stay at 3:20 a.m. is even more indicative of a drug transaction. Therefore, not only could police know that Doughty had spent time at a suspected drug house, police could infer from Doughty's short stay at 3:20 a.m. that there was a substantial possibility Doughty had purchased drugs from that house. That particularized suspicion is what was lacking in Gleason and Richardson and is what establishes reasonable suspicion in this case.
¶ 30 Because I conclude that the seizure of Doughty was a valid Terry stop, I would affirm the Court of Appeals.
WE CONCUR: Chief Justice BARBARA A. MADSEN and Justice JAMES M. JOHNSON.
NOTES
[1] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.
[2] "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Const. art. I, § 7.
[3] These first two facts accomplish the same purpose, i.e., to establish that the house was a suspected drug house.
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[2] The majority asserts that every exception to the warrant requirement must be established by clear and convincing evidence. Majority at 575. In the context of a Terry stop, this requirement offers only confusion. Saying the State needs to establish reasonable suspicion by clear and convincing evidence is as absurd as saying the State must show guilt beyond a reasonable doubt by a preponderance. This error is recent and arose in dictum in State v. Garvin, 166 Wash.2d 242, 250, 207 P.3d 1266 (2009). For the proposition that all exceptions to the warrant requirement need be shown by clear and convincing evidence, Garvin cites to State v. Smith, 115 Wash.2d 775, 789, 801 P.2d 975 (1990). Garvin, 166 Wash.2d at 250, 207 P.3d 1266. However, Smith did not recognize a clear and convincing burden for all warrant exceptions; instead, only the voluntariness of consent had to be shown by clear and convincing evidence. 115 Wash.2d at 789, 801 P.2d 975. I have found no case other than Garvin where we have recognized a clear and convincing burden for a warrant exception outside of consent. In short, the dictum in Garvin was an unwarranted extension that injects confusion into our Fourth Amendment and article I, section 7 jurisprudence. This court should not only refuse to follow it but should explicitly repudiate it.
[3] Apparently, Gleason was singled out because he was a Caucasian leaving a "primarily Hispanic" apartment complex. Gleason, 70 Wash.App. at 14-15, 18, 851 P.2d 731. As this was an inappropriate basis for suspecting criminal conduct, the court did not consider this information in determining the existence of reasonable suspicion. Id. at 16, 18, 851 P.2d 731 (citing State v. Barber, 118 Wash.2d 335, 336, 823 P.2d 1068 (1992)).