IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69218-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANTE URELL PIGGEE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: November 25, 2013 |
| | ) | |

VERELLEN, J. — Dante Piggee appeals the trial court's denial of his CrR 3.6 motion to suppress evidence obtained subsequent to search. Deputy Nix heard a dispatch that a man in the International District light rail station had refused to show identification to fare enforcement officers when confronted about a possible fare evasion. Deputy Nix then saw Piggee leave the International District station and step into the street, with two fare enforcement officers looking right at Piggee. Deputy Nix grabbed Piggee's arm and detained him.

The State contends Deputy Nix conducted a valid Terry[1] stop of Piggee based on the information he heard in the dispatch. An officer may conduct a Terry stop where the officer has a reasonable and articulable suspicion, based on specific and objective facts, that the person seized has committed or is about to commit a crime. A mere hunch is inadequate. Failure to pay a fare is a civil infraction, although failure to pay a

---

[1] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

fare more than once within a 12-month period can be the basis for a criminal misdemeanor. The State presented no evidence to demonstrate Deputy Nix had any specific facts that Piggee's alleged failure to pay fare was criminal rather than civil. Deputy Nix's mere hunch that Piggee may have evaded paying a fare more than once in 12 months was inadequate for a Terry stop. We reverse.

## FACTS

On December 6, 2011, Deputy Robert Nix of the King County Sheriff's Office was working the Metro Transit beat. Deputy Nix received a dispatch from transit security that two fare enforcement officers had contacted an individual who was being uncooperative, refusing to provide identification, and leaving the International District Station. The two fare enforcement officers reported they were following a black adult male northbound away from the station, and that they suspected a possible fare evasion.

Deputy Nix was about three blocks from the International District Station when he heard the dispatch and responded to the call. Deputy Nix testified that he noticed a black adult male, later identified as Piggee, stepping into the street against traffic, mid-block, walking away from the International District station. Deputy Nix observed the two fare enforcement officers looking right at Piggee as he crossed. He decided to stop Piggee because he "fit the description" and was "crossing unusually against traffic."[2] Deputy Nix then told Piggee that he wanted to speak with him and asked him to stop. Deputy Nix intended to identify him and investigate a possible fare violation.

---

[2] Report of Proceedings (RP) (July 19, 2012) at 26. Deputy Nix testified there were other black male adults in his vicinity, but Piggee was the only one that the fare enforcement officers were staring at, and the only one crossing against the light.

Deputy Nix tried to grab Piggee's hand, but Piggee ignored Deputy Nix and continued walking away. At that point, Deputy Nix grabbed Piggee's arm, pulled him toward the car and told him to put his hands on the car. Piggee told Deputy Nix that he had his light rail ticket and tried to pull away, and the interaction resulted in a large struggle. Deputy Nix then arrested Piggee, with the assistance of the two fare enforcement officers.

In a search subsequent to arrest, police found Piggee in possession of marijuana. The State charged Piggee with one count of third degree assault and one count of violation of the uniform controlled substances act for possessing marijuana with the intent to manufacture or deliver.

Piggee moved to suppress the evidence obtained subsequent to search, arguing Deputy Nix did not have adequate grounds for a Terry stop. The court denied Piggee's motion, concluding "Deputy Nix' initial detention of the defendant was supported by sufficient information to warrant an investigatory stop of the defendant."[3] A jury found Piggee not guilty of assault in the third degree and convicted him of the violation of the uniform controlled substances act violation. Piggee now appeals.

## DISCUSSION

Warrantless searches and seizures are per se unreasonable and violate the Fourth Amendment and article 1, section 7 of our state constitution.[4] One of the carefully drawn exceptions to this rule is an investigative stop pursuant to Terry. The State has the burden to show the seizure in question falls within the exception.[5] We

---

[3] Clerk's Papers at 28.

[4] State v. Duncan, 146 Wn.2d 166, 171, 43 P.3d 513 (2002).

[5] Id. at 172.

3

review de novo conclusions of law from an order pertaining to the suppression of evidence.[6]

A valid Terry stop requires the officer to have a reasonable and articulable suspicion, based on specific, objective facts, that the person seized has committed or is about to commit a crime.[7] A mere hunch that the individual is involved in criminal conduct is inadequate.[8] Innocuous facts alone do not justify a stop.[9] Piggee contends that Deputy Nix had no basis on which to suspect him of committing criminal conduct. At the time Deputy Nix stopped Piggee, Deputy Nix knew that fare enforcement officers had reported an uncooperative individual who had refused to show identification and was leaving the station.

The State argues that Deputy Nix' seizure of Piggee was a permissible Terry stop because Nix was aware that a fare evasion could lead to criminal liability. Deputy Nix knew that a single instance of fare evasion is the basis for a civil infraction,[10] but that multiple fare evasions could be a gross misdemeanor.[11, 12] He testified that "it's

---

[6] State v. Mendez, 137 Wn.2d 208, 214, 970 P.2d 722 (1999), overruled on other grounds by Brendlin v. California, 551 U.S. 249, 127 St. Ct. 2400, 168 L. Ed. 2d 132 (2007).

[7] Duncan, 146 Wn.2d at 172 (citing Terry, 392 U.S. at 21).

[8] State v. Doughty, 170 Wn.2d 57, 63, 239 P.3d 573 (2010). A hunch alone does not warrant police intrusion into people's everyday lives.

[9] State v. Tijerina, 61 Wn. App. 626, 629, 811 P.2d 241 (1991).

[10] RCW 81.112.220(2).

[11] The criminal code does not explicitly state that a person who has evaded fares multiple times is guilty of criminal conduct. Rather, RCW 81.112.230(1) states that nothing in chapter 81.112 RCW precludes law enforcement from prosecuting for theft or other charges an individual who "[f]ails to pay the required fare on more than one occasion within a twelve-month period."

[12] Deputy Nix did not suspect that a felony had occurred or would occur.

possible that it was a gross misdemeanor, but I didn't know at the time."[13]

Deputy Nix did not have any basis on which to suspect Piggee had evaded a fare before—the only fact that distinguishes criminal and noncriminal behavior in this context.[14] Each of the facts that Deputy Nix knew when he grabbed Piggee's arm is equally consistent with a first-time fare evasion as with a subsequent fare evasion: (1) failure to cooperate with fare enforcement officers; (2) refusal to show identification; (3) departure from the station; and (4) stepping into the street mid-block. Because there are no specific or objective facts in the record[15] to support a reasonable and articulable suspicion that Piggee had already evaded paying a fare once before, Deputy Nix conducted the Terry stop on a purely theoretical possibility of criminal conduct. While a determination that reasonable suspicion exists need not rule out the possibility of innocent conduct,[16] the limited facts presented by the State at the suppression hearing fail to demonstrate Deputy Nix had any reasonable suspicion of criminal conduct. Deputy Nix had no more than a hunch that the conduct might be a misdemeanor, and his detention of Piggee was not a valid Terry stop.[17]

---

[13] RP (July 19, 2012) at 29.

[14] The State presents no other argument or evidence that the Terry stop was based on a suspicion of any other type of criminal conduct.

[15] The State included in its brief evidence presented at trial. We consider only the evidence before the trial court at the suppression hearing.

[16] State v. Marcum, 149 Wn. App. 894, 907, 205 P.3d 969 (2009)

[17] Our Supreme Court in Duncan declined to extend Terry to general civil infractions. Duncan, 146 Wn.2d at 174-75. The court reasoned, "When investigating a civil infraction an officer is not seeking to arrest an individual, but rather to issue a citation. In light of the lower risk to society involved with civil infractions . . . a less intrusive procedure would be more acceptable than with the commission of a felony or even a misdemeanor." Id. at 177. The court held that detention of Duncan for violation of an open container ordinance, a civil infraction, was not justified because the alleged infraction had not occurred in the officers' presence. Id. at 178-79 (explaining the

We note the trial court's legitimate concern about individuals who refuse to cooperate with fare enforcement officers or law enforcement personnel. But here, the State relied exclusively on the theory that the possibility of a fare evasion supported a Terry stop. The State has not presented other possible theories that might support a detention to obtain identification information from a person suspected of fare evasion.[18]

---

officers had only seen Duncan standing near an open container, and there was no evidence of constructive possession). Had the infraction occurred in the officers' presence, the officers could have detained Duncan under RCW 7.80.050(2), which provides "a notice of civil infraction may be issued by an enforcement officer when the civil infraction occurs in the officer's presence." Id. at 178. Alternatively, the court explained, if the infraction does not occur in the officer's presence, "'[a] court may issue a notice of civil infraction if an enforcement officer files with the court a written statement that . . . the officer has reasonable cause to believe that a civil infraction was committed.'" Id. at 178 (alteration in original) (quoting RCW 7.80.050(3)).

[18] For example, RCW 7.80.060 provides that "[a] person who is to receive a notice of civil infraction under RCW 7.80.050 is required to identify himself or herself to the enforcement officer by giving his or her name, address, and date of birth. Upon the request of the officer, the person shall produce reasonable identification including a driver's license or identicard."

RCW 7.80.040 defines "enforcement officer" as "a person authorized to enforce the provisions of the title or ordinance in which the civil infraction is established." Further, both fare enforcement and law enforcement officers have the authority to detain a person who is unable or unwilling to reasonably identify himself or herself for "a period of time not longer than is reasonably necessary to identify the person for purposes of issuing a civil infraction." RCW 7.80.060; see also Duncan, 146 Wn.2d at 178-79.

In addition to the authority provided to fare enforcement and law enforcement officers under chapter 7.80 RCW, RCW 81.112.210 permits enforcement officers of regional transit authorities (like Sound Transit) to request identification from a passenger who does not produce proof of payment, and to issue a citation in conformance with RCW 7.80.070.

However, the State has not argued that Deputy Nix or the fare enforcement officers who ultimately assisted Deputy Nix in arresting Piggee were attempting to detain Piggee under RCW 7.80.060 to obtain identification. In fact, the State expressly argues that Piggee waived his right to challenge his seizure under chapter 7.80 RCW because the suppression motion and hearing concerned only the legitimacy of the seizure as a Terry stop.

Finally, the State did not pursue any charges for Piggee's refusal to show identification to either the fare enforcement officers or Deputy Nix. See, e.g.,

No. 69218-6-I/7

Based on the narrow argument offered by the State, we reverse the trial court's ruling on Piggee's motion to suppress and vacate Piggee's conviction.

WE CONCUR:

_____

_____    Becker, J.

---

RCW 9.91.025(1)(p); RCW 9A.76.020. Nor did the State argue Deputy Nix had the right to detain Piggee and obtain identification to issue a citation for jaywalking when Deputy Nix observed Piggee step into the street mid-block.

7