FILED
COURT OF APPEALS
DIVISION II

2015 AUG 11 AM 9: 10

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46205-2-II |
| Respondent, | |
| v. | |
| ADAM G. JONES, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Adam G. Jones appeals his conviction for possession of a controlled substance (methamphetamine).[1] He argues that the trial court violated his constitutional rights by denying his motions to (1) suppress evidence found as a result of an unlawful *Terry*[2] stop and (2) strike the entire jury panel before voir dire. We hold that (1) the *Terry* stop was lawful and (2) Jones cannot prove that he was prejudiced by the trial court's denial of his motion to strike the entire jury panel and any error was harmless beyond a reasonable doubt. Accordingly, we affirm Jones's conviction.

## FACTS

At about 5:30 a.m. in January 2014, Deputy Mathew Schlecht responded to a suspicious vehicle report in rural Lewis County. The reporting party said that a vehicle had pulled into her driveway a few minutes earlier and when she went outside to investigate, the driver rolled down

---

[1] Uniform Controlled Substances Act (VUCSA), ch. 69.50 RCW.

[2] *Terry v. Ohio*, 392 U.S. 1; 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

the window, said to her, "Sorry, ma'am," and drove away. Clerk's Papers (CP) at 32. She gave a description of the vehicle as well as a license plate number.

Schlecht knew that several homes had been burglarized over the past few months in the same area as where the reporting party lived. These burglaries all occurred in a similar manner, which Schlecht knew from viewing home surveillance video from the burglarized homes. The videos showed that a vehicle pulled into a driveway, the suspect waited to see if anyone was at home, and then the suspect burglarized the home if it appeared to be empty.

When Schlecht went to investigate, he saw a vehicle that matched the description provided by the reporting party. The license plate number matched as well except for two numbers that Schlecht believed had been transposed. Schlecht stopped the vehicle and the driver identified himself as Jones; a female passenger, Cassandra Anderson, was also in the vehicle. Schlecht checked Jones's driving status and learned that his driving privilege had been suspended. Schlecht placed Jones under arrest for driving while license suspended (DWLS). During his post-arrest search, Schlecht found in Jones's pants pocket a small glass vial with a cork top and white powder inside, which he confirmed was methamphetamine after a field test.

The State charged Jones with one count of unlawful possession of a controlled substance (methamphetamine). The trial court denied Jones's motion to suppress the vial containing white powder, ruling that Schlecht discovered the vial pursuant to a *Terry* stop based on reasonable belief that a crime had been committed. The trial court granted Jones's motion to preclude the State from mentioning that Schlecht arrested Jones for DWLS.

On the first day of trial before voir dire, Jones asked the trial court to strike the entire jury panel. Jones explained that the assigned panel contained jurors that deliberated in Anderson's trial

2

the week before. The trial court denied Jones's motion to strike the panel because the jury would not be hearing testimony from the same witnesses and the expected testimony in Jones's trial was going to be "quite limited." 1 Verbatim Report of Proceedings (VRP) (Jury Trial – April 21, 2014) at 13. The trial court explained,

> I looked at my notes from the testimony that was given. The testimony was really -- it was very, very brief. We basically have the introductory evidence from . . . Schlecht saying that there was a suspicious vehicle call, [Schlecht] stopped the vehicle, there was three people, *he took the driver out of the vehicle for driving while suspended*, male passenger had a warrant and then [Anderson] was left in the car.. . . . So what the jury has heard would be the basic background information that they are going to hear in any event.

1 VRP at 12, 13 (emphasis added).

During voir dire, Jones's counsel asked the jurors from Anderson's trial whether they could be impartial in Jones's case. 2 VRP (Voir Dire – April 21, 2014) at 13-16. Each juror replied that they could. When the trial court called the numbers of the jurors who would serve in Jones's trial, the only juror called who had also been involved in Anderson's trial was the alternate juror, number 35. The alternate juror was ultimately discharged prior to jury deliberations on Jones's case. The jury found Jones guilty. He appeals.

## ANALYSIS

### I. SCHLECHT STOPPED JONES PURSUANT TO A VALID *TERRY* STOP

Jones argues that the trial court's conclusion that Schlecht's stop of his vehicle was a valid *Terry* stop was incorrect because Schlecht did not have reasonable, articulable suspicion of criminal activity. Because the stop was unlawful, he argues, the fruit of that stop found pursuant to his arrest must be suppressed. We hold that Schlecht's stop of Jones's car was lawful. Thus, we hold that the trial court properly ruled that the vial of methamphetamine was admissible.

We review a trial court's ruling on a motion to suppress evidence to determine whether substantial evidence supports the trial court's findings of fact. *State v. Russell*, 180 Wn.2d 860, 866, 330 P.3d 151 (2014). Substantial evidence is evidence that is sufficient "'to persuade a fair-minded person of the truth of the stated premise.'" *Russell*, 180 Wn.2d at 866-67 (quoting *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009)). Unchallenged findings of fact are verities on appeal. *State v. Hughes*, 118 Wn. App. 713, 722, 77 P.3d 681 (2003). We review conclusions of law de novo to determine if the conclusions of law are supported by the findings of fact. *Russell*, 180 Wn.2d at 866-67.

Although we presume that warrantless seizures are unreasonable under the Fourth Amendment and article 1, section 7 of the Washington Constitution, one exception to this presumption is a brief investigatory stop, called a *Terry* stop. *State v. Doughty*, 170 Wn.2d 57, 61-62, 239 P.3d 573 (2010). An officer may conduct a *Terry* stop when he or she has reasonable, articulable suspicion of a substantial possibility that criminal conduct has occurred or is about to occur based upon a totality of the circumstances. *State v. Snapp*, 174 Wn.2d 177, 197-98, 275 P.3d 289 (2012). To justify a *Terry* stop, the officer must have "'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Snapp*, 174 Wn.2d at 197 (quoting *Terry*, 392 U.S. at 21). Presence at a high crime area is not enough to justify a *Terry* stop. *State v. Fuentes*, Nos. 90039-6, 90270-4, 2015 WL 2145820 at *5 (Wash. May 7, 2015). The State bears the burden to establish that the *Terry* stop was justified with clear and convincing evidence. *Doughty*, 170 Wn.2d at 62.

Jones analogizes this case to *Doughty*, but that case is distinguishable. In *Doughty*, an officer stopped a person who spent about two minutes at a suspected "drug house" in the early

morning. *Doughty*, 170 Wn.2d at 64. The officer did not observe Doughty interact with anyone in the house and the only evidence that the police had to suspect drug activity in the house were neighbor complaints. *Doughty*, 170 Wn.2d at 60, 64. The suspect's presence at the house, the short time he spent there, and the time of day, together with the complaints were insufficient to justify a *Terry* stop. *Doughty*, 170 Wn.2d at 64-65.

Here, Schlecht's stop of Jones was not based solely on Jones being in a high crime area, but also based on a report of a suspicious vehicle in the area. The reporting party said that a vehicle entered her driveway, but when she approached it the person said, "'Sorry, ma'am'" before driving away. CP at 32. Schlecht knew that this behavior was similar to the pattern of home burglaries in the area over the past few months.[3] Once he arrived in the area, Schlecht saw a vehicle that matched the description of the suspicious vehicle reported by the caller, but the caller had transposed two numbers of the license plate number of the vehicle.[4] The trial court's findings of

---

[3] The trial court made the following findings of fact:
    (6) Dep. Schlecht had previous knowledge of burglaries that had taken place in the area over the past few months where the suspect would pull into a driveway, wait to see if anyone was home, and then burglarize the home if nobody was home.
    (7) These prior burglaries took place . . . in the general area of the call Dep. Schlecht was responding to.
    (8) Dep. Schlecht gained his knowledge of the burglaries by briefings and by observing home surveillance video from homes that were burglarized.
    (9) The suspect in the prior burglaries was recorded engaging in these actions, which were similar to what the caller had described in this incident.
    (10) Dep. Schlecht could not recall the description of the vehicle in those burglaries, but could recall the "modus operandi" of the burglar.
CP at 32.

[4] "Schlecht arrived in the area and observed a vehicle matching the description given by the caller, with the exception that a couple of the numbers in the license plate had been transposed." CP at 32.

fact that detail these facts are verities because Jones does not challenge them. *Hughes*, 118 Wn. App. at 722.

These facts constitute more than Jones mere presence in the area where the burglaries occurred. Considering the totality of the circumstances, the unchallenged findings of fact support the trial court's conclusion that Schlecht conducted a valid *Terry* stop. The trial court properly ruled that the vial of methamphetamine was admissible.

## II. JONES CANNOT PROVE THAT HE WAS PREJUDICED BY THE TRIAL COURT'S DENIAL OF HIS MOTION TO STRIKE JURY PANEL AND ANY ERROR WAS HARMLESS

Jones next argues that he is entitled to a new trial because the trial court violated his right to a fair trial and to an impartial jury when it denied his motion to strike the entire jury panel.[5] Jones's claim of error fails because he cannot prove that he was prejudiced by the trial court's denial of his motion and any constitutional error was harmless beyond a reasonable doubt.

The United States Constitution and the Washington Constitution guarantee each criminal defendant the right to a fair trial by an impartial jury. U.S. CONST. amend VI; U.S. CONST. amend XIV; CONST. art. 1, § 3; CONST. art. 1, § 21. CrR 6.4(a) provides that a trial court shall sustain a challenge "to the entire panel" only for a "material departure from the procedures prescribed by law for their selection." A trial court's denial of the right to a fair and impartial jury requires reversal. *State v. Gonzales*, 111 Wn. App. 276, 282, 45 P.3d 205 (2002).

---

[5] Jones also argues that his panel was tainted because the same panel heard about his arrest for DWLS during voir dire in Anderson's trial. We decline to address this argument because it presents facts that are not before us. The only information on the record of what Jones's panel knew from Anderson's trial comes from the trial court's recitation of its notes on *testimonial evidence* presented at Anderson's trial, not details from voir dire in Anderson's case.

But a defendant must demonstrate prejudice to justify reversal if the jury selection process in fact substantially complied with statutes and court rules. *State v. Williamson*, 100 Wn. App. 248, 253, 996 P.2d 1097 (2000). Constitutional errors may be harmless if the State demonstrates harmlessness beyond a reasonable doubt. *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). A constitutional error is harmless beyond a reasonable doubt if any reasonable jury would have reached the same result in the absence of the error. *Guloy*, 104 Wn.2d at 425.

Jones argues that because the trial court, when it read its notes from Anderson's trial, stated that the jury panel in that case heard that Jones was arrested for DWLS and he had successfully moved to suppress that information, the jury was not impartial to his case because that information was prejudicial. However, Jones cannot demonstrate prejudice.

First, Jones does not argue that any part of the jury selection process in his trial violated a statute or court rule. Second, the record does not show that Jones challenged any of the jurors for cause after he questioned each of the jurors who had served in Anderson's trial. Each juror replied that they could impartially evaluate the evidence in Jones's trial. Lastly, the record demonstrates that none of the jurors who sat on Anderson's trial ultimately deliberated on Jones's case. The trial court called only juror 35 as the alternate, but that juror was ultimately excused and did not deliberate.

Even assuming that some of the jurors in Jones's trial knew that he was arrested for DWLS, any constitutional error was harmless beyond a reasonable doubt. The trial court instructed the jury that to find Jones guilty of possession of a controlled substance it must find beyond a reasonable doubt that (1) Jones possessed methamphetamine and (2) the act occurred in Lewis County. Schlecht testified that during his post-arrest search he found in Jones's pants pocket a

glass vial that contained white power, which a field test confirmed was methamphetamine, and that this occurred in Lewis County. A forensic scientist testified that crime laboratory tests confirmed the field test. Thus, any reasonable jury would have reached the same result even if the trial court had granted Jones's motion to strike the entire jury panel.

## CONCLUSION

We hold that (1) the trial court properly concluded that the vial of methamphetamine was admissible because the *Terry* stop was lawful and (2) Jones cannot prove that he was prejudiced by the trial court's denial of his motion to strike the entire jury panel and any error in the trial court's denial was harmless beyond a reasonable doubt. Therefore, we affirm Jones's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MAXA, P.J.

LEE, J.