# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49242-3-II |
| Respondent, | |
| v. | |
| SARAH JEAN SEWARES, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Sarah Jean Sewares appeals her conviction for possession of a controlled substance, methamphetamine. Sewares contends the trial court erred by denying her motion to suppress evidence seized from inside her purse. We affirm Sewares's conviction.[1]

## FACTS[2]

A confidential informant (CI) notified City of Centralia Detective Adam Haggerty that Christopher Neff would be traveling to Centralia to deliver multiple ounces of heroin to a specific motel. This CI had previously provided both state and federal law enforcement with reliable information relating to narcotics distribution. The CI provided information to law enforcement about Neff's location prior to arriving at the motel. Law enforcement verified the information.

---

[1] Sewares also opposes appellate costs, asserting that she does not have the ability to pay because she is indigent. We decline to address the issue. A commissioner of this court will consider whether to award appellate costs in due course under RAP 14.2 if the State decides to file a cost bill and if Sewares objects to that cost bill.

[2] The following facts are taken from the trial court's unchallenged CrR 3.6 findings of fact, which are verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

As the CI reported, Neff arrived at the motel. Neff exited the vehicle with two female companions, Sewares and Jazmine Hammond. All three walked to the motel room where the CI told the officers Neff would be delivering the narcotics. Hammond carried a back pack and Sewares carried a purse. Law enforcement perceived Sewares as an accomplice to Neff.

Officers handcuffed all three individuals outside the motel room. City of Centralia Detective Chad Withrow asked Sewares if she possessed any controlled substances. Sewares told Withrow that she had methamphetamine in her purse. Withrow then looked inside Sewares's open purse and saw an open pill bottle containing what Withrow recognized as methamphetamine. The detective retrieved the methamphetamine.

The State charged Sewares with possession of a controlled substance, methamphetamine. Sewares filed a motion to suppress the methamphetamine seized from inside her purse. The trial court denied the motion, concluding that Sewares's detention was a lawful *Terry*[3] stop. Following a bench trial, the court convicted Sewares as charged. She appeals.

## ANALYSIS

Sewares contends the trial court erred by denying her motion to suppress the methamphetamine located inside her purse because law enforcement illegally detained her. Sewares argues the detention outside the motel room did not constitute a valid *Terry* stop. She further argues even if it was a valid *Terry* stop, Withrow exceeded the scope of the *Terry* stop by asking her if she possessed any controlled substances. We disagree with all of Sewares's arguments.

---

[3] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

A.    STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence to determine whether substantial evidence supports the trial court's findings of fact and whether those findings, in turn, support the trial court's conclusions of law. *State v. Russell*, 180 Wn.2d 860, 866, 330 P.3d 151 (2014). Unchallenged findings of fact are verities on appeal. *O'Neill*, 148 Wn.2d at 571. We review a trial court's legal conclusions de novo. *State v. Roden*, 179 Wn.2d 893, 898, 321 P.3d 1183 (2014).

B.    LEGAL PRINCIPLES

The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution prohibit a warrantless search and seizure unless the State demonstrates that one of the narrow exceptions to the warrant requirement applies. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). "These exceptions include exigent circumstances, consent, searches incident to a valid arrest, inventory searches, the plain view doctrine, and *Terry* investigative stops." *York v. Wahkiakum Sch. Dist. No. 200*, 163 Wn.2d 297, 310, 178 P.3d 995 (2008) (footnote omitted). A *Terry* stop requires a well-founded suspicion that the defendant is engaged in criminal conduct. *State v. Doughty*, 170 Wn.2d 57, 62, 239 P.3d 573 (2010). The police officer must be able to point to "'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" *State v. Williams*, 102 Wn.2d 733, 739, 689 P.2d 1065 (1984) (quoting *Terry*, 392 U.S. at 21). If the stop goes beyond investigatory purposes, it becomes an arrest and requires a valid arrest warrant or probable cause. *State v. Flores*, 186 Wn.2d 506, 520, 379 P.3d 104 (2016).

3

The State bears the burden of showing that the search and seizure was supported by a warrant or an exception to the warrant requirement. *State v. Hendrickson*, 129 Wn.2d 61, 71, 917 P.2d 563 (1996). The exclusionary rule requires suppression of all evidence obtained pursuant to a person's unlawful seizure. *State v. Winterstein*, 167 Wn.2d 620, 632, 220 P.3d 1226 (2009). If the initial stop was unlawful or officers exceed the scope of a valid stop, the evidence discovered during the unlawful portion of that stop is inadmissible. *State v. Saggers*, 182 Wn. App. 832, 839, 332 P.3d 1034 (2014).

### C. CONCLUSIONS OF LAW SUPPORTED BY FINDINGS

The trial court concluded the encounter between Sewares and Withrow was a valid *Terry* stop.

Here, based on the unchallenged findings of fact, a CI, who had previously provided both state and federal law enforcement with information relating to narcotics distribution, provided information that Neff would be delivering heroin to a certain motel room. As the CI reported, Neff arrived at the motel. Neff exited the vehicle with Sewares and Hammond. Each woman was carrying a bag. All three walked to the motel room where the CI told the officers Neff would be delivering the narcotics. Sewares was perceived as an accomplice to Neff.

Taking the above specific and articulable facts together with rational inferences from those facts, officers had a well-founded suspicion to stop Sewares. Thus, we hold that the trial court's conclusions that the initial stop was a lawful *Terry* stop is supported by the findings of fact.

We also hold that Withrow did not exceed the scope of the *Terry* stop by asking if Sewares possessed any controlled substances.

A *Terry* stop must be limited in scope and duration to fulfilling the investigative purpose of the stop. If the results of the initial stop dispel an officer's suspicions, the officer must end the investigation without further intrusion. If the officer's initial suspicions are confirmed or are further aroused, the scope of the stop may be extended and its duration may be prolonged. *State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003).

Here, Withrow was outside the motel room with Sewares based on a CI's tip that heroin was being delivered. The officer suspected Sewares was an accomplice since she arrived with Neff and walked with him to the motel room where the delivery was supposed to occur. Both Sewares and Hammond were carrying bags when they exited the vehicle. Since Sewares was detained during the investigation of a controlled substance offense, the officer's question whether Sewares possessed any controlled substances would be necessary to effectuate the stop.

Withrow was therefore entitled to ask a moderate number of questions to confirm or dispel his suspicions as part of the *Terry* stop. Withrow's question whether Sewares possessed any controlled substances did not exceed the valid scope of the *Terry* stop. Accordingly, Sewares's detention was lawful. The trial court properly concluded likewise. Consequently, the trial court did not err in denying Sewares's motion to suppress.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Johanson, P.J.

Lee, J.