IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  35696-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ENRIQUE MURILLO, JR., | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Some facts on appeal support a finding of probable cause, while other facts discount a finding of probable cause to arrest Enrique Murillo, during which arrest an officer found methamphetamine on Murillo's person.  After weighing all facts, we uphold the determination of probable cause and the conviction of Murillo for possession of a controlled substance because an informant provided information incriminating Murillo that was also against the informant's penal interest.  Nevertheless, because the to-convict instruction failed to identify the controlled substance as methamphetamine, we remand to the prosecution for resentencing.  We also remand for corrections of two errors in the judgment and sentence.  FACTS

The principal question on appeal surrounds whether the trial court erred when

denying Enrique Murillo's motion to suppress evidence found on his person during an arrest. Thus, we glean our facts from testimony during a suppression hearing. The State claims those facts support the trial court's conclusion that law enforcement officers held probable cause to arrest Murillo.

On August 24, 2017, Kennewick Police Officer Cory McGee saw a white Mitsubishi Eclipse parked near 4412 W. 7th in Kennewick. The Mitsubishi bore no license plate, and all usable parts had been stripped from the vehicle. Officer McGee called Benton County emergency services, which reported the Mitsubishi as stolen.

Other Kennewick Police Department officers arrived at the vicinity of the Mitsubishi Eclipse. The officers noticed a trail of oil leading from the white Mitsubishi to the driveway of a nearby address, 723 S. Volland Street. Outside of this residence, officers found a Toyota truck reported as stolen, which truck displayed a stolen license plate. The officers saw another license plate in a nearby garbage dumpster.

Kennewick Police Department officers approached the house at 723 S. Volland and spoke with Jenna Ross, Jessica Miller, and a man who identified himself as Jonathan Watts. Miller denied knowledge of the white Mitsubishi. Ross denied knowledge of the Mitsubishi and Toyota being stolen, but she disclosed that an individual she called "Cousins" brought the white Mitsubishi to the Volland address. Clerk's Papers (CP) at 106. Ross knew not who transported the Toyota pickup to the residence.

Detective Marco Monteblanco also interviewed Jonathan Watts. Watts denied stealing the vehicles but admitted to working on the Mitsubishi with a person he called "Cousins." CP at 106. Kennewick Police Detective Daniel Todd assumed the questioning of Watts. We do not know if Todd's questioning of Watts occurred at the police station or at the Volland address. Watts informed Detective Todd that he had resided at the Volland Street address for a few days, and the residents at the home were Jenna Ross and Tyler Hoyt. Watts stated that Cousins worked on the Mitsubishi and possibly removed parts from the car.

Jonathan Watts described Cousins, to Detective Daniel Todd, as a Hispanic male with a spider web tattoo on his elbow. Watts believed Cousins' real name started with the letter E. Watts claimed that Cousins lived in an apartment complex, which contained the name "Sage," on Hood Avenue, east of Tweedt Street in Kennewick. CP at 107. He also identified the color of the apartment complex. Watts said that Cousins drove to the Volland residence in a green Kia.

Law enforcement officers journeyed to Sage Creek Apartments on Hood Avenue, where they saw a dark blue Kia Optima. Detective Daniel Todd texted a picture of the Kia to another officer. The other officer showed the photograph to Jonathan Watts, who confirmed that Cousins drove the car. Detective Todd's research unearthed that Enrique Murillo owned the Kia Optima.

3

Kennewick Detective Rick Runge prepared and showed a photo montage to Jonathan Watts. Watts identified the picture of Enrique Murillo as the person he knew as "Cousins." CP at 107.

Kennewick Police Department officers stopped Enrique Murillo's vehicle as he left his apartment. Officers arrested Murillo. During a search incident to arrest, Officer Jeff Sagen grabbed a bag with white crystal from Murillo's person. The contents of the bag later tested positive as methamphetamine.

Later on August 24, officers interrogated Jonathan Watts again. Watts admitted that he gave a false name and his true name was James Whitney. Whitney further conceded he had stolen the Toyota Truck and the white Mitsubishi.

PROCEDURE

The State of Washington charged Enrique Murillo with one count of possession of a controlled substance, in violation of RCW 69.50.4013(1). The sole charge read:

> That the said ENRIQUE MURILLO, JR in the County of Benton, State of Washington, on or about the 24th day of August, 2017, in violation of RCW 69.50.4013(1), did unlawfully possess a controlled substance, to wit: *methamphetamine*, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Washington.

CP at 1 (emphasis added).

Enrique Murillo moved to suppress the methamphetamine found on his person on the ground that officers lacked probable cause to arrest him. He argued that Jenna Ross'

4

and James Whitney's informant tips failed to establish probable cause to arrest him under

the *Aguilar-Spinelli* test.

After an evidentiary hearing, the trial court denied Enrique Murillo's motion to

suppress. During its oral ruling, the trial court noted that the question of probable cause

was "a close call." Report of Proceedings (RP) (Oct. 25, 2017) at 47. The trial court

entered the following conclusions of law:

> 1. The *Aguilar-Spinelli* test established in *Spinelli v. United States*, 393 U.S. 410, (1969) and *Aguilar v. Texas*, 378 U.S. 108 (1964) is the proper framework to analyze whether an informant's tip is sufficient to establish probable cause.
> 2. Assuming that both the basis of knowledge prong and the veracity prong are met under *Aguilar-Spinelli*, the information taken at face value constitutes probable cause to arrest the defendant for possession of a stolen motor vehicle.
> 3. The basis of knowledge prong is satisfied, and the defendant conceded this[.]
> 4. Neither James Whitney, nor Jenna Ross had an established track record of providing reliable information to police.
> 5. Although the officers could adequately establish that Enrique Murillo was the individual that Ross and Whitney referred to when describing Cousins, officers were unable to corroborate the allegations that it was he that had brought the white Mitsubishi to the residence and possibly worked on it or removed parts from it.
> 6. Nevertheless, James Whitney's and Jenna Ross's statements to police were against penal interest and weigh in favor of finding that the veracity prong is satisfied. Specifically, James Whitney's statement that he worked on the stolen vehicle with the defendant, was against his penal interest.
> 7. The fact that Jenna Ross and James Whitney independently gave a similar account of who had worked on or brought the white Mitsubishi to the house lends credibility to both Ross's and Whitney's accounts and weighs in favor of finding that the veracity prong is satisfied.

5

8. The fact that Whitney knew the first letter of Cousins' real name, the car he drove[,] and where he lived lends credibility to Whitney's account.

9. The identification of Enrique Murillo as Cousins during the photo lineup lends credibility to Whitney's account.

10. Even though neither Ross nor Whitney had an established track record, under the circumstances, their statements satisfy the veracity prong of the *Aguilar-Spinelli* test.

11. At the time Murillo was arrested, officers had probable cause to arrest for the felony crime of possession of a stolen motor vehicle.

12. The resulting search incident to arrest was lawful, and the alleged controlled substance discovered during such search is admissible in trial.

CP at 108-09.

The prosecution proceeded to a jury trial. Officer Jeff Sagen of the Kennewick Police Department testified that he arrested Enrique Murillo, searched his person, and found a red baggie with a crystalline substance in it. Forensic scientist Jayne Wilhelm testified that she tested the white crystalline material and found it to contain methamphetamine.

Enrique Murillo testified in his own defense. Murillo averred that, on the morning of his arrest, he changed into a pair of shorts that he grabbed from a dirty pile of clothes on the floor of his home. Murillo claimed that the shorts he wore at the time of his arrest did not belong to him and that he lacked knowledge that the pocket of the shorts contained methamphetamine.

The trial court delivered to the jury a set of jury instructions. Jury instruction 7 declared:

It is a crime for any person to possess a controlled substance.

CP at 88. Jury instruction 8, the to-convict instruction, read:

> To convict the defendant of the crime of possession of a controlled substance, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about August 24th, 2017, the defendant possessed *a controlled substance*; and
> (2) That this act occurred in the State of Washington.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 89 (emphasis added). Note that instruction 8 did not mention methamphetamine as the controlled substance. Instruction 10 stated:

> Methamphetamine is a controlled substance.

CP at 92. The verdict form for the charge stated:

> We, the jury, find the defendant ENRIQUE MURILLO JR., _____ [write in "not guilty" or "guilty"] of the crime of Unlawful Possession of a Controlled Substance as *charged in Count I*.

CP at 96 (emphasis added). Several jury instructions referenced the crime of possession of a controlled substance. Nevertheless, none of the jury instructions informed the jury as to the nature of the charge found in count I.

The jury found Enrique Murillo guilty. The court sentenced Murillo as a felon to six months plus one day confinement. The judgment and sentence contains the following

7

provisions, among others:

> 5.5 Any violation of this Judgment and Sentence is punishable by up to 60 days of confinement per violation.  RCW 9.94A.634[.]
> . . . .
> 5.6b FELONY FIREARM OFFENDER REGISTRATION.  The defendant is required to register as a felony firearm offender.  The specific registration requirements are in the "Felony Firearm Offender Registration" attachment.

CP at 119 (boldface omitted).

## LAW AND ANALYSIS

Enrique Murillo challenges both his conviction and his sentence.  He challenges his conviction on the basis that Kennewick Police Department officers lacked probable cause to arrest him and thus the trial court should have suppressed evidence of the methamphetamine seized during his arrest.  He challenges his sentence on the ground that, although the jury found that he possessed a controlled substance, the jury never expressly found he possessed methamphetamine and thus a sentence based on possessing methamphetamine must be struck.  We address the conviction first.

### Probable Cause for Arrest

This appeal contains discrete facts that, although in isolation are not unique, when combined form a distinctive configuration.  Some factors discount the presence of probable cause, while other factors support the existence of probable cause.  After analyzing the facts, we conclude the most important factor to be James Whitney's statement against penal interest and this factor created probable cause despite Whitney

8

providing law enforcement a false name.

To review the facts, Officer Cory McGee spotted a stolen white Mitsubishi Eclipse, without a license plate and with all usable parts stripped therefrom. McGee and other officers noticed a trail of oil leading to 723 Volland Street, in front of which officers discovered another stolen vehicle. At the Volland Street address, officers spoke to three people. All denied knowledge of stolen vehicles, but two, Jenna Ross and James Whitney, identified a man named Cousins as the one who brought the Mitsubishi to the neighborhood. Whitney admitted to working on the Mitsubishi with Cousins. Whitney stated Cousins was a Hispanic man, with a spider tattoo on his elbow, whose real name started with an "E," who lived in an apartment complex on Hood Avenue that contained the name "Sage," and who drove a green Kia. On follow-up to Whitney's information, officers went to Sage Creek Apartments on Hood Avenue, saw a blue Kia Optima, and learned that Enrique Murillo owned the Kia. Whitney then confirmed, through a photograph, Murillo as Cousins and the blue Kia Optima as Cousins' car.

We isolate three critical facts. First, James Whitney spoke to officers in person and provided a false name. Second, Whitney implicated himself by conceding he worked on the disassembled car. Third, Whitney provided details about Cousins, aka Enrique Murillo, later confirmed by law enforcement, but the details did not implicate Cousins in any crime. Did these facts justify the arrest of Murillo for stealing a vehicle or possession of a stolen car? The answer lies in whether the officers possessed reason to

9

believe the truth of the information disclosed by Whitney and the other witness implicating Enrique Murillo, Jenna Ross.

On appeal, Enrique Murillo attacks the credibility of informants Jenna Ross and James Whitney. The State argues that law enforcement could rely on the statements from Ross and Whitney because each provided a statement against penal interest.

In retrospect, James Whitney, if not also Jenna Ross, provided misleading, if not false, information to Kennewick police officers about the theft of motor vehicles. At least, the State never prosecuted Murillo with stealing or possessing a stolen car, the allegations that led to his arrest. Nevertheless, this court does not view, with hindsight, information used by law enforcement to form probable cause. *State v. Remboldt*, 64 Wn. App. 505, 509, 827 P.2d 282 (1992).

Officers seized methamphetamine from Enrique Murillo's person when arresting him, without an arrest warrant or a search warrant, for allegedly stealing a motor vehicle or possession of the stolen vehicle. As a general rule, warrantless searches and seizures are per se unreasonable under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution. *State v. Doughty*, 170 Wn.2d 57, 61, 239 P.3d 573 (2010). The burden falls on the State to demonstrate that a warrantless seizure falls into a narrow exception to the rule. *State v. Doughty*, 170 Wn.2d at 61. We purportedly "jealously and carefully" draw these exceptions. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). A search incident to arrest is one such

10

exception to the warrant requirement. *State v. Gaddy*, 152 Wn.2d 64, 70, 93 P.3d 872 (2004). Under article I, section 7, a lawful custodial arrest is a constitutionally required prerequisite to any search incident to arrest. *State v. Gaddy*, 152 Wn.2d at 70. Therefore, we must determine if law enforcement lawfully arrested Enrique Murillo.

A police officer holds authority to arrest a person absent a warrant when the officer possesses probable cause to believe that a person committed or is committing a felony. RCW 10.31.100. Theft of a motor vehicle and possession of a stolen motor vehicle qualify as Class B felonies. RCW 9A.56.065; RCW 9A.56.068.

The existence of probable cause is determined by an objective standard. *State v. Gaddy*, 152 Wn.2d 64 (2004). Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information justify a person of reasonable caution to conclude the suspect committed an offense. *State v. Terrovona*, 105 Wn.2d 632, 643, 716 P.2d 295 (1986). Probable cause constitutes the likelihood of a crime, not proof of a crime beyond a reasonable doubt. *State v. Gaddy*, 152 Wn.2d at 70.

When a law enforcement officer relies on an informant to gain probable cause for an arrest, article I, section 7 of the Washington Constitution requires adherence to the two-pronged test arising from the United States Supreme Court decisions of *Aguilar-Spinelli*. *State v. Smith*, 102 Wn.2d 449, 455, 688 P.2d 146 (1984); *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli v. United States*, 393 U.S.

11

410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969). The *Aguilar-Spinelli* test requires: (1) a showing that the informant has a sufficient basis of knowledge, and (2) a showing of the veracity of the informant. *State v. Smith*, 102 Wn.2d at 455. The second prong seeks to evaluate the truthfulness of the informant. *State v. Lair*, 95 Wn.2d 706, 709, 630 P.2d 427 (1981). To satisfy both prongs, the State must prove the underlying circumstances showed that the informant was credible and obtained the information in a reliable manner. *State v. Gaddy*, 152 Wn.2d 64, 72 (2004). The State must satisfy both prongs of the *Aguilar-Spinelli* test, unless the State shows probable cause by an independent police investigation corroborating the informant's tip to the extent the investigation cures the tip's deficiency. *State v. Vickers*, 148 Wn.2d 91, 112, 59 P.3d 58 (2002).

Enrique Murillo agrees that the State satisfied the basis of knowledge prong. Murillo challenges the fulfillment of the veracity of the informant prong.

The State may fulfill the veracity prong of the *Aguilar-Spinelli* test in one of two ways: (1) the informant has a history of providing credible information, or (2) if the informant never provided information in the past and even if law enforcement knows nothing about the informant, the facts and circumstances under which the informant supplied the information reasonably support an inference that the informant spoke the truth. *State v. Chamberlin*, 161 Wn.2d 30, 41-42, 162 P.3d 389 (2007). We agree with Enrique Murillo that Jenna Ross and James Whitney lacked any history of providing reliable information to the police. The State does not argue otherwise.

12

If a police investigation reveals suspicious activity along the lines of the criminal behavior proposed by the informant, the corroborating investigation may satisfy the requirements of *Aguilar-Spinelli*. The corroborating information must point to suspicious activities or indications of criminal activity along the lines suggested by the informant. *State v. Maxwell*, 114 Wn.2d 761, 769, 791 P.2d 223 (1990). The amount and kind of detailed information given by an informant may also enhance his reliability. *State v. O'Connor*, 39 Wn. App. 113, 122, 692 P.2d 208 (1984). Still, Washington courts have never considered corroboration as a prerequisite to a reasonable inference of truthfulness. *State v. Patterson*, 83 Wn.2d 49, 56, 515 P.2d 496 (1973); *State v. O'Connor*, 39 Wn. App. at 120.

The law deems the circumstances under which the informant supplied the information to encompass whether the informant implicated himself or herself in criminal activity. If the informant has no record of reliable information, the State may still satisfy the veracity prong by showing that the informant's accusation qualifies as a declaration against penal interest. *State v. Jackson*, 102 Wn.2d 432, 437, 688 P.2d 136 (1984). When a person admits self-incriminating activity to the police, we presume the statement is true. *State v. Chenoweth*, 160 Wn.2d 454, 483, 158 P.3d 595 (2007). Statements against penal interest are intrinsically reliable because a person is unlikely to make a self-incriminating admission that leads to prosecution unless it is true. *State v. Chenoweth*, 160 Wn.2d at 483; *State v. Lair*, 95 Wn.2d at 711 (1981).

13

Jenna Ross and James Whitney gave law enforcement each's purported respective names. The informant's identification of himself or herself is not alone a sufficient ground on which to credit the informer. *State v. Duncan*, 81 Wn. App. 70, 78, 912 P.2d 1090 (1996). Nevertheless, Washington courts hold that an informant's willingness to come forward and identify himself or herself to be a strong indicator of reliability. *State v. Chenoweth*, 160 Wn.2d 454, 483 (2007); *State v. Chamberlin*, 161 Wn.2d at 42 n.7. If law enforcement knows the identity of an informant, as opposed to the informant being anonymous or professional, the necessary showing of reliability is relaxed. *State v. Gaddy*, 152 Wn.2d 64, 72-73 (2004). Apparently psychology supports the proposition that an anonymous reporter will more likely employ rumor or irresponsible conjecture or be marred by self-interest. *State v. Gaddy*, 152 Wn.2d 64, 72-73. An anonymous reporter will not suffer ramifications from supplying false information, including the crime of false reporting, but one disclosing one's name renders himself criminally liable for false accusations. *State v. Chenoweth*, 160 Wn.2d 454 (2007); RCW 9A.76.175. The law deems citizen informants presumptively reliable. *State v. Gaddy*, 152 Wn.2d at 73.

Enrique Murillo insists that James Whitney was an anonymous informant since Whitney gave a false name. This contention holds some, but only limited, appeal. Most anonymous informers speak by telephone. James Whitney spoke to law enforcement officers in person at his temporary home. Officers could thereafter locate him at the residence and identify him by his physical appearance. To this extent, Whitney was a

14

known informant. Although we do not review probable cause in hindsight, law enforcement later located Whitney and spoke again to him, at which time he admitted his true name and his stealing of the motor vehicle.

One might argue that law enforcement officers should have asked Whitney for identification to confirm his true name before relying on his remarks about Cousins or Enrique Murillo. Law enforcement routinely asks citizens for identification in other settings.

Enrique Murillo cites no decision wherein the court holds or even discusses whether law enforcement should procure identification from an informer before relying on the informer's disclosures. We find only one decision, in which a court discussed an informer giving a false name. In *State v. Duncan*, 81 Wn. App. 70 (1996), the State charged James Duncan with possession of a controlled substance. Duncan's girlfriend, Sara DaVee, initiated law enforcement's search of Duncan's person. Nevertheless, DaVee gave the false name of Meda Hansen. Hansen complained to Officer Bill Guyer of a domestic dispute, during which Duncan pulled her hair. Guyer noticed red marks on Hansen's face and loose hair. Hansen added that she recently saw Duncan take fourteen ounces of marijuana from a storage unit. Based on this information, law enforcement procured a warrant to search the storage unit. This court affirmed the superior court's suppression of the marijuana found in the storage unit.

In *State v. Duncan*, this court noted that law enforcement's affidavit in support of

15

the search warrant failed to explain Sara DaVee's credibility or reliability. The court wrote:

> Police did not check her identity, address, phone number, employment, residence or length of residence, or family history.

81 Wn. App. at 77. Officer Bill Guyer's observation of DaVee's head and hair confirmed domestic violence, but did not confirm the possession of marijuana. The opinion did not indicate when law enforcement learned that DaVee gave a false name, and, assuming law enforcement learned before applying for a search warrant, the importance of the false name. This court held that law enforcement lacked probable cause to search the storage unit, but we relied on the lack of confirming information with regard to marijuana in storage rather than DaVee giving a false name. Thus, *Duncan* does not hold that law enforcement must necessarily ask an informant for identification.

James Whitney supplied law enforcement information about Cousins' real name, the brand of car he drove, and his residence. Police confirmed the accuracy of the information. In turn, Whitney correctly identified Enrique Murillo in the photo line-up. Whitney gave the wrong color of the Kia, but some people see blue when others see green and vice versa.

The veracity of the informant increases if law enforcement's investigation corroborates the informant's tip. *State v. Vickers*, 148 Wn.2d 91 (2002). Nevertheless, corroboration of innocuous facts only shows that the informer has some familiarity with

16

the suspect's affairs. *State v. Jackson*, 102 Wn.2d 432, 438 (1984). Such corroboration only justifies an inference that the informer has some knowledge of the suspect and his activities, not that criminal activity is occurring. *State v. Jackson*, 102 Wn.2d 432, 438. The information Whitney supplied law enforcement merely confirmed that Whitney knew Murillo. The information did not validate Murillo's alleged illegal activities or his involvement with the white Mitsubishi.

Enrique Murillo legitimately challenges the trial court's conclusion of law 6, which declared that Jenna Ross and James Whitney uttered statements against her or his respective penal interests. We agree that Ross did not implicate herself. During her interview with officers, Ross denied knowledge that the Toyota pickup and the Mitsubishi were stolen. She claimed that Cousins brought the white Mitsubishi to the house, but that she had no clue how the Toyota arrived in the vicinity. These statements do not subject Ross to criminal liability.

We agree with the State that James Whitney voiced a statement against penal interest. Whitney's acknowledgement of work in stripping a car and work on a disassembled vehicle with a person allegedly barely known implicated Whitney as an accomplice or principal in stealing a car or possession of a stolen car. In *State v. Chenoweth*, this court agreed that an informant provided reliable information when he told an officer that he assisted the accused in making methamphetamine. Because the testimony of an accomplice suffices to convict beyond a reasonable doubt, statements by

17

the accomplice should suffice to present probable cause for an arrest of the defendant. *Craig v. Singletary*, 127 F.3d 1030, 1044-45 (11th Cir. 1997).

The law deems a statement against penal interest reliable because the informant more likely tells the truth if he speaks against his advantage. This rationale assumes that the informant knows that his comments implicate him. We lack any evidence that James Whitney knew that his disclosures implicated him. He may not have known the car to be stolen, or, assuming he knew the car to be stolen, he did not know that working on the car rendered him an accomplice. We find no case law, however, that demands the State show that the informant knew he spoke against his interests.

One could argue that James Whitney lied about Enrique Murillo bringing the car to the neighborhood in order to shift principal blame onto Murillo and deflect primary guilt from him. One case recognizes this possibility. *Craig v. Singletary*, 127 F.3d 1030, 1045-46 (11th Cir. 1997). Nevertheless, the federal court rejected this possibility as a reason to discount statements against penal interest.

Once again, Enrique Murillo legitimately emphasizes James Whitney's provision of a false identity. Murillo contends that, since Whitney gave an ersatz name, his report does not qualify as a statement against interest. We answer similarly to our answer with regard to the informant identifying himself. Law enforcement knew the location of Whitney and could confront him on giving false information. We also must view the evidence in the light of the officers' knowledge at the time of the arrest of Enrique

Murillo, not in hindsight.  *State v. Remboldt*, 64 Wn. App. 505, 509 (1992).

After reviewing the many factors relevant to a determination of the veracity of James Whitney and his statement implicating Enrique Murillo with the possession of the Mitsubishi, we conclude, based on a combination of factors, that law enforcement officers possessed probable cause to arrest Enrique Murillo at the time of his seizure.  We primarily rely on Whitney's uttering of a statement against penal interest.  Case law repeatedly emphasizes the strength of such statements.  Although Whitney primarily supplied innocuous information to law enforcement, he still supplied accurate details.  Although he provided a false name, he did not anonymously call law enforcement.  Law enforcement knew his location and his looks.  We know of the false identity only in retrospect.  Because law enforcement possessed probable cause to arrest Enrique Murillo, we affirm his conviction.

Sentence

Enrique Murillo asks this court to remand for resentencing because the omission of the identity of the controlled substance in the to-convict instruction constituted harmful error for purposes of sentencing.  The State contends that the omission of the name of the controlled substance from the to-convict instruction was not error and that, even if error, the omission was harmless error as to Murillo's sentence.  We agree with Murillo.

The State charged, in the information, that Enrique Murillo "did unlawfully possess a controlled substance, to wit: methamphetamine."  CP at 1.  Jury instruction 8

19

directed the jury to convict Enrique Murillo if it found that Murillo "possessed a controlled substance." CP at 89. But the jury instruction omitted the word "methamphetamine." Instruction 10 informed the jury that methamphetamine is a controlled substance, but the instruction did not apprise the jury that the State only charged Murillo with possessing methamphetamine, and not one or more other substances. Murillo postulates that the jury could have convicted him of possessing a controlled substance other than methamphetamine, when the State never charged him with possessing another substance. The jury verdict only read that the jury found Murillo guilty of possessing a controlled substance, not of possessing methamphetamine.

The omission of the nature of the controlled substance from a to-convict jury instruction can implicate both the accused's conviction and sentence, but we need not address the implications on the conviction in this appeal. A to-convict instruction must include each essential element of the crime charged. *State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917 (1997); *State v. Clark-El*, 196 Wn. App. 614, 618, 384 P.3d 627 (2016). When the identity of a controlled substance increases the statutory maximum sentence which the defendant may face on conviction, the identity of the substance becomes an essential element. *State v. Goodman*, 150 Wn.2d 774, 778, 83 P.3d 410 (2004). As we analyze later, the nature of the controlled substance could increase Enrique Murillo's sentence. Therefore, the trial court committed error when omitting the word "methamphetamine" from jury instruction 8.

The omission of an essential element from the to-convict instruction is subject to harmless error analysis for purposes of the accused's conviction. *State v. Brown*, 147 Wn.2d 330, 332, 58 P.3d 889 (2002). Enrique Murillo impliedly and correctly concedes harmless error for purposes of his conviction.

We must still address whether, for purposes of sentencing, we may apply harmless error analysis to the error in Enrique Murillo's to-convict jury instruction and, if so, whether harmless error occurred. RCW 69.50.4013, under which the State charged Murillo, declares:

> (1) It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by this chapter.
> (2) Except as provided in RCW 69.50.4014, any person who violates this section is guilty of a class C felony punishable under chapter 9A.20 RCW.
> (3)(a) The possession, by a person twenty-one years of age or older, of useable marijuana, marijuana concentrates, or marijuana-infused products in amounts that do not exceed those set forth in RCW 69.50.360(3) is not a violation of this section, this chapter, or any other provision of Washington state law.
> (b) The possession of marijuana, useable marijuana, marijuana concentrates, and marijuana-infused products being physically transported or delivered within the state, in amounts not exceeding those that may be established under RCW 69.50.385(3), by a licensed employee of a common carrier when performing the duties authorized in accordance with RCW 69.50.382 and 69.50.385, is not a violation of this section, this chapter, or any other provision of Washington state law.
> (4)(a) The delivery by a person twenty-one years of age or older to one or more persons twenty-one years of age or older, during a single twenty-four hour period, for noncommercial purposes and not conditioned upon or done in connection with the provision or receipt of financial

21

consideration, of any of the following marijuana products, is not a violation of this section, this chapter, or any other provisions of Washington state law.

Note that the controlled substance offender's sentence may vary depending on the nature of the controlled substance. RCW 69.50.4014 reads:

Except as provided in RCW 69.50.401(2)(c) or as otherwise authorized by this chapter, any person found guilty of possession of forty grams or less of marijuana is guilty of a misdemeanor.

The constitutional right to a jury trial requires that a sentence be authorized by a jury's verdict. *State v. Morales*, 196 Wn. App. 106, 109, 383 P.3d 539 (2016). If a court imposes a sentence not authorized by the jury's verdict, harmless error analysis does not apply. *State v. Williams-Walker*, 167 Wn.2d 889, 900-01, 225 P.3d 913 (2010). The law requires the trial court "to impose only the lowest possible sentence for unlawful possession of a controlled substance." *State v. Gonzalez*, 2 Wn. App. 2d 96, 114, 408 P.3d 743, *review denied*, 190 Wn.2d 1021, 418 P.3d 790 (2018).

In analyzing whether the omission of "methamphetamine" in Enrique Murillo's to-convict jury instruction was harmless error as to his sentence we review four Washington decisions: *State v. Sibert*, 168 Wn.2d 306, 230 P.3d 142 (2010) (plurality opinion); *State v. Rivera-Zamora*, 7 Wn. App. 2d 824, 435 P.3d 844 (2019); *State v. Gonzalez*, 2 Wn. App. 2d 96 (2018); and *State v. Clark-El*, 196 Wn. App. 614 (2016). In *State v. Sibert*, a jury convicted Richard Sibert of three counts of delivery of a controlled substance and one count of possession of a controlled substance with intent to deliver. The to-convict

22

instruction omitted the identity of the specific controlled substance. Nevertheless, each of the four to-convict instructions began by stating: "'to convict the Defendant . . . of the crime of delivery of a controlled substance *as charged* . . . .'" 168 Wn.2d at 312 (emphasis added). Unfortunately, we do not know if any jury instruction expressly identified the charges as possession and delivery of methamphetamine. We also do not know if the jury verdict referenced methamphetamine or asked the jury to convict or not convict Sibert of the crime "as charged." Four of the Supreme Court justices ruled that the omission in the jury instruction did not constitute error.

The Washington Supreme Court decided *State v. Sibert* by a plurality. Justice Barbara Madsen concurred in result only. Judge Madsen did not pen a separate opinion. A plurality opinion has limited precedential value and is not binding on the courts. *In re Personal Restraint of Isadore*, 151 Wn.2d 294, 302, 88 P.3d 390 (2004). Another court cannot assess the correct holding of an opinion signed by four justices when, as here, the fifth vote, concurring in the result only, is unaccompanied by an opinion. *Kailin v. Clallam County*, 152 Wn. App. 974, 985, 220 P.3d 222 (2009). As noted by this court, in *State v. Clark-El*, 196 Wn. App. at 619 (2016), we cannot assess the holding in *Sibert*.

Four justices dissented in *State v. Sibert* on the basis that the omission in the jury instruction constituted error and harmless error does not apply to an error in sentencing. The identity of the controlled substance affected the applicable seriousness level of the crime. According to the dissenters, because the jury found Richard Sibert guilty of an

23

unidentified controlled substance, the trial court lacked authority to impose a sentence beyond the standard range for any controlled substance under the charging statute.

In *State v. Rivera-Zamora*, 7 Wn. App. 2d 824 (2019), this court found instructional error harmless as to the defendant's sentence. Bogar Rivera-Zamora appealed convictions for delivery of a controlled substance, methamphetamine, and possession of a controlled substance with intent to deliver. The to-convict instruction did not identify the controlled substance. Nonetheless, the charging document identified methamphetamine as the substance Rivera-Zamora allegedly possessed with the intent to deliver. More importantly, even though the elements instruction omitted the word "methamphetamine," the verdict form stated that the jury found Rivera-Zamora guilty of unlawful possession of a controlled substance with intent to deliver—methamphetamine. In other words, the verdict entered by the jury identified the controlled substance as methamphetamine. This court held that the trial court did not err in sentencing Rivera-Zamora because the jury "expressly found that Mr. Rivera-Zamora possessed methamphetamine with intent to deliver." *State v. Rivera-Zamora*, 7 Wn. App. 2d at 830. Accordingly, the error in the elements instruction was harmless as to both the conviction and sentence.

In *State v. Gonzalez*, 2 Wn. App. 2d 96 (2018), the State charged Leonel Gonzalez with unlawful possession of a controlled substance, methamphetamine, under former RCW 69.50.4013 (2015). Although the forensic examination of the controlled substance

24

revealed both methamphetamine and cocaine, the amended information mentioned only possession of methamphetamine and not cocaine. The to-convict instruction declared that the State must prove "the defendant possessed a *controlled substance. . . ." State v. Gonzalez*, 2 Wn. App. 2d at 104. The to-convict instruction omitted the type of controlled substance, but the instruction referred to the offense "as charged in Count II." *State v. Gonzalez*, 2 Wn. App. 2d at 104. One instruction mentioned methamphetamine being a controlled substance.

On appeal, the *Gonzalez* court discussed the application of harmless error to the conviction and to sentencing. The court noted that former RCW 69.50.4013(2), (3), and (5) impose different maximum sentences based on the type and amount of the controlled substance possessed. One charged under the statute could be guilty of a misdemeanor. The statute also excluded penalties for the possession of marijuana under some circumstances altogether.

The *Gonzalez* court reasoned that, without specifying the identity of the controlled substance, the to-convict instruction could allow the jury to convict a defendant and impose a class C felony sentence based on the possession of any controlled substance, including any amount of marijuana. The court stated that, if a court imposes a sentence not authorized by the jury's verdict, harmless error analysis does not apply. The court held that, because the jury's verdict did not specify the controlled substance Gonzalez unlawfully possessed, the only authorized sentence was the lowest possible sentence for

25

unlawful possession of a controlled substance. The court impliedly ruled that the use of the words "as charged in count II" did not save the to-convict instruction from constitutional error. The court remanded for resentencing on the possession of a controlled substance conviction.

In *State v. Clark-El*, 196 Wn.2d 614, 618 (2016), the State charged Randolph Clark-El with one count of delivery of a controlled substance, "to-wit: methamphetamine . . . a class B felony." Nevertheless, the to-convict instruction failed to identify the nature of the controlled substance. Also, the jury verdict did not specify the type of controlled substance. The court remanded for resentencing.

Enrique Murillo's appeal occupies the interstices among the four Washington decisions. Murillo's to-convict instruction did not identify the possessed controlled substance as methamphetamine. The to-convict instruction also failed to refer to possession of a controlled substance "as charged." A separate jury instruction referenced methamphetamine, and no other drug, as a controlled substance. The verdict form did not specify the nature of the controlled substance. The verdict form asked the jury to convict or acquit Murillo of the offense "as charged." The information only charged Murillo with possession of methamphetamine. Nevertheless, no jury instruction informed the jury that the State only charged Murillo with possession of methamphetamine.

We conclude the omission of the identity of the controlled substance from Enrique

Murillo's to-convict instruction constituted harmful error. The case law preaches the

primacy of the to-convict instruction and the need to mention the nature of the controlled

substance in the instruction. Murillo's to-convict instruction lacked any mention of

methamphetamine. The error in the to-convict instruction may be absolved if the verdict

form expressly identifies the controlled substance. Murillo's verdict form did not include

the word "methamphetamine." The verdict form asked the jury to convict or acquit

Murillo "as charged," but no instruction, let alone the to-convict instruction, listed the

charged substance as methamphetamine. The to-convict instruction also failed to employ

the phrase "possession of a controlled substance as charged." We also note that a

majority of the Washington Supreme Court has never expressly adopted a harmless error

analysis for sentencing when the to-convict instruction fails to identify the controlled

substance.

All of the Washington decisions holding that the absence of the identity of the

controlled substance in the to-convict instruction remand for resentencing without

directing the resentencing court of the sentence to enter. The law requires the trial court

to impose only the lowest possible sentence for possession of a controlled substance.

*State v. Gonzalez*, 2 Wn. App. 2d 96, 114 (2018); *State v. Clark-El*, 196 Wn. App. 614,

624 (2016). We hold that the lowest offense consistent with the jury's express finding of

possession of a controlled substance is possession of marijuana of forty grams or less

under RCW 69.50.4014.  RCW 69.50.4014 provides:

> Except as provided in RCW 69.50.401(2)(c) or as otherwise authorized by this chapter, any person found guilty of possession of forty grams or less of marijuana is guilty of a misdemeanor.

Thus, the resentencing court should sentence Enrique Murillo to a misdemeanor sentence.

### Judgment and Sentence Corrections

The judgment and sentence contains the following two provisions:

> 5.5 Any violation of this Judgment and Sentence is punishable by up to 60 days of confinement per violation.  RCW 9.94A.634[.]
> . . . .
> 5.6b FELONY FIREARM OFFENDER REGISTRATION.  The defendant is required to register as a felony firearm offender.  The specific registration requirements are in the "Felony Firearm Offender Registration" attachment.

CP at 119.  Enrique Murillo argues that both paragraphs contain errors.  The State concedes error.  Remand to the trial court for correction of any errors constitutes the remedy for errors in the judgment and sentence.  *State v. Healy*, 157 Wn. App. 502, 516, 237 P.3d 360 (2010).

The legislature recodified RCW 9.94A.634 as RCW 9.94B.040, effective August 1, 2009.  LAWS OF 2008, ch. 231 § 56.  RCW 9.94B.040 applies only to crimes committed before July 1, 2000.  *State v. Bigsby*, 189 Wn.2d 210, 214, 399 P.3d 540 (2017).  Enrique Murillo's charged crime of unlawful possession of a controlled substance occurred on August 24, 2017, well after July 1, 2000.  Therefore, paragraph 5.5 authorizing sanctions under former RCW 9.94A.634 constitutes error.

28

Section 5.6b of the judgment regarding felony firearm offender registration is also inaccurate. RCW 9.41.330(1) declares:

> Whenever a defendant in this state is convicted of a *felony firearm offense* . . . the court must consider whether to impose a requirement that the person comply with the registration requirements of RCW 9.41.333 and may, in its discretion, impose such a requirement.

(Emphasis added.) RCW 9.41.010(10)(e) defines "felony firearm offense" as "[a]ny felony offense if the offender was armed with a firearm in the commission of the offense."

Enrique Murillo's crime does not meet the definition of "felony firearm offense." The superior court convicted Murillo of unlawful possession of a controlled substance, and the record does not suggest that Murillo bore a firearm at the time of his arrest.

Legal Financial Obligations

The trial court assessed legal financial obligations at sentencing of a $500 victim penalty assessment fee, a $200 criminal filing fee, and a $100 DNA fee. Although mandatory when imposed, the criminal filing fee and DNA fee are no longer mandatory under new legislation as explained in *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). The DNA fee is mandatory if the offender has yet to have his DNA collected by the State.

The trial court found Enrique Murillo indigent at the sentencing. As a result, he asks that the criminal filing fee be struck from his judgment and sentence. Murillo also

No. 35696-5-III
*State v. Murillo*

requests that the DNA fee be struck. Murillo has criminal convictions in the state of Washington which occurred in 1996 and 1998. Prior to 2002, the DNA identification statute required every person convicted of a felony sex offense or violent offense to provide a blood sample for DNA. LAWS OF 1989, ch. 350. Murillo's late nineties convictions do not include a felony sex offense or violent offense. Therefore, we conclude the State has never collected his DNA.

Pursuant to *Ramirez*, we remand for the trial court to strike the criminal filing fee. The $100 DNA collection fee shall remain.

## CONCLUSIONS

We affirm the conviction of Enrique Murillo for possession of a controlled substance. We remand to the superior court for resentencing of Murillo for a misdemeanor and for the trial court to strike sections 5.5 and 5.6b from the judgment and sentence. We remand for the striking of the $200 criminal filing fee.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

I CONCUR:

_____
Lawrence-Berrey, C.J.

No. 35696-5-III

KORSMO, J. (dissenting) — Even though *State v. Sibert*, 168 Wn.2d 306, 230 P.3d 142 (2010) (plurality opinion), provides no governing *analysis*, it does provide a governing *result*. We are bound by that result, even if not the analysis, under the facts of this case. We are required to affirm by the results of that case and also because the error is absolutely harmless.

As to the latter proposition first, I concur in the reasoning of Judge Melnick in his dissent in *State v. Gonzalez*, 2 Wn. App. 2d 96, 116-120, 408 P.3d 743 (2018) (Melnick, J., dissenting in part). The error is absolutely harmless because the evidence presented at trial presented only one controlled substance for the jury's consideration—methamphetamine—and Mr. Murillo agreed that he possessed the substance. Here, the information alleged that Mr. Murillo possessed methamphetamine. Clerk's Papers (CP) at 1. The jury was advised that the "defendant in this case is charged with unlawful possession of a controlled substance, methamphetamine." Supplemental Report of Proceedings (Oct. 30, 2017) at 5. The elements instruction omitted the identity of the controlled substance, but the jury was instructed that methamphetamine was a controlled substance. CP at 89, 92. The instructions did not identify any other controlled substance. The defense proposed, and received, an instruction on unwitting possession. CP at 72-74,

93. The verdict form stated that the jury found Mr. Murillo "guilty of the crime of unlawful possession of a controlled substance as charged in count I." CP at 97. In other words, the only issue in this case was whether or not Mr. Murillo possessed the substance innocently. Because both sides agreed that Murillo possessed methamphetamine, it is harder to conceive of a stronger harmless error case.

To reach the opposite result, the majority here adopts the analysis of the dissent in *Sibert* without saying so. Of course, a dissent does not state the law. *See Cole v. Harveyland, LLC*, 163 Wn. App. 199, 207, 258 P.3d 70 (2011) ("But the meaning of a majority opinion is not found in a dissenting opinion."). In doing so, the majority overlooks a basic rule of construction for a case without a governing rationale. In those circumstances, this court must apply the holding of the narrowest concurring opinion. *Davidson v. Hensen*, 135 Wn.2d 112, 128, 954 P.2d 1327 (1998); *Kailin v. Clallam County*, 152 Wn. App. 974, 985-986, 220 P.3d 222 (2009). When the concurring vote is simply a "result only," the narrowest holding is the outcome of the case. *Kailin*, 152 Wn. App. at 985; *Kitsap All. of Prop. Owners v. Cent. Puget Sound Growth Mgmt. Hr'gs. Bd.*, 152 Wn. App. 190, 197, 217 P.3d 365 (2009).

The *Sibert* plurality found there was no error in omitting the identity of the controlled substance under the facts of the case and affirmed the judgment and sentence. 168 Wn.2d at 317. Justice Madsen concurred in the result only and did not state a reason for that result. The primary dissenting opinion (three justices) concluded that the error

2

No. 35696-5-III
*State v. Murillo—Dissent*

was not harmless and resulted in an unauthorized sentence. 168 Wn.2d at 318-325 (Alexander, J., dissenting). The solo dissent of Justice Sanders concluded that harmless error analysis did not apply and the verdict form also violated *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). *Id.* at 326-334 (Sanders, J., dissenting).

Here, the *Sibert* result controls because the relevant facts are largely identical. In each instance, the verdict forms incorporated the charges referenced in the charging document.[1] The jury in this case was aware of the controlled substance identified in the charging document due to the court's preliminary instruction to the panel, as well as the argument of the parties that Mr. Murillo possessed methamphetamine. In both cases, the only controlled substance identified in the instructions was methamphetamine, and it was the only controlled substance identified in the evidence.[2] In addition, this case had the added feature that Mr. Murillo admitted that he possessed methamphetamine. Accordingly, the verdict here reflects the same verdict as *Sibert*—the jury found that the charge in the information was proved beyond a reasonable doubt. Thus, the result must be the same.

---

[1] The elements instructions in *Sibert* referenced the counts "as charged" in the information, resulting in the jury convicting him "as charged." 168 Wn.2d at 312-313. The verdict form here used the same "as charged" language. CP at 97.

[2] *Sibert*, 168 Wn.2d at 313; CP at 92.

3

No. 35696-5-III
*State v. Murillo—Dissent*

Because of both the *Sibert* result and the fact that the controlled substance was not a disputed element in this case, the error was completely harmless. The judgment and sentence should be affirmed.

_____
Korsmo, J.

4