[No. 10898-8-III.   Division Three.   March 17, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. JERRY RAY RICHARDSON, JR., *Appellant*.

694

*Myrna Contreras-Trejo,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Bruce Hanify, Deputy,* for respondent.

SHIELDS, C.J. — Jerry Ray Richardson, Jr., appeals his conviction of possession of a controlled substance, cocaine. He contends the trial court erred by denying his motion to suppress the cocaine because it was seized in an unlawful search. We agree, vacate the conviction and dismiss.

Late on the night of March 30, 1990, Yakima Police Officer William H. Guyer was patrolling an area on the southeast side of Yakima known for its high drug activity. On three occasions, over a period of 4 hours, he observed an unfamiliar Mexican male engage in suspicious activity consistent with "running drugs". The individual, later identified as Tom Gonzales, would stand on a corner, then approach people in cars and talk with them. Whenever Officer Guyer or another patrol car approached, he would walk away and disappear. On the third occasion, at 2:30 a.m., March 31, 1990, Mr. Gonzales saw the officer at Third Street and Maple, turned around, walked in the opposite direction toward Second Street and Maple, and again disappeared.

Twenty minutes later, Officer Guyer saw Mr. Gonzales come around the corner at Third Street and Maple, walking

with an unknown white male later identified as Mr. Richardson. He turned and pulled up next to the two men. Officer Guyer got out of his patrol car and asked them if he could talk to them for a few minutes. He then had them empty their pockets and place both the contents and their hands on the car. Officer Guyer requested identification, explained the area was known for its drug activity and asked them if they lived in the area. Mr. Richardson told the officer he did not live there; he had been at the Route 66 Bar at Ninth Street and Yakima and was walking to his parents' home in the 1500 block of Lincoln. The officer commented he had not chosen the most direct route. Officer Guyer testified he then asked whether either of the men used drugs or had any on them. They both replied they did not. He further testified Mr. Richardson consented to a search of his pockets by stating "Go right ahead. I don't use drugs. I will take any test to prove it." Mr. Richardson testified Officer Guyer searched him without requesting or receiving his consent.

Officer Guyer found a small, white paper folded in a way commonly used to package cocaine in Mr. Richardson's right front coin pocket. When asked what it was, Mr. Richardson claimed he did not know what was in the paper or how it had gotten there. Officer Guyer then arrested him. The paper bindle contained cocaine.

Mr. Richardson moved to suppress the cocaine. Following the suppression hearing, the court concluded the case did not involve an investigatory stop, but a consensual one followed by a consensual search. The judge denied the motion, stating:

> I find this is a consensual stop. And this is becoming an increasingly common kind of stop in this community. I suspect that we will be seeing many more cases like this until some line is drawn at the Court of Appeals, or higher, that would prevent this kind of conduct. But this Court feels that under the facts of this case and under the authority of [State v. Mennegar, 114 Wn.2d 304, 787 P.2d 1347 (1990)] and [State v. Belanger, 36 Wn. App. 818, 677 P.2d 781 (1984)], that the evidence need not be suppressed.

The trial court subsequently entered written findings of fact and conclusions of law consistent with its determination no seizure occurred. Mr. Richardson was convicted following a bench trial.

■ Mr. Richardson contends the court erred by denying his motion to dismiss. He argues he was unreasonably seized in violation of his constitutional rights when he was forced to empty his pockets and place his hands on the police car. We agree. Although the findings of a trial court following a suppression hearing are of great significance to a reviewing court, the constitutional rights at issue require our independent evaluation of the evidence. *State v. Menne-gar*, 114 Wn.2d 304, 309-10, 787 P.2d 1347 (1990).

■ Not every encounter between an officer and an individual amounts to a seizure. In Washington, a police officer has not seized an individual merely by approaching him in a public place and asking him questions as long as the individual need not answer and may simply walk away. *State v. Aranguren*, 42 Wn. App. 452, 455, 711 P.2d 1096 (1985); *State v. Belanger*, 36 Wn. App. 818, 820, 677 P.2d 781 (1984). However, once the officer restrains the individual's freedom to walk away, he has seized that person. *State v. White*, 97 Wn.2d 92, 105, 640 P.2d 1061 (1982) (citing *Terry v. Ohio*, 392 U.S. 1, 16, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)). Restraint amounting to a seizure occurs if, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 100 S. Ct. 1870, *reh'g denied*, 448 U.S. 908 (1980). *See also Mennegar*, at 310-11.

Here, the initial contact between Officer Guyer and the two men was a permissible encounter which did not intrude upon Mr. Richardson's constitutionally protected liberty or privacy. However, the officer then had them both empty their pockets and place their hands on the patrol car while he questioned them. That conduct constituted a show of authority which transformed the encounter to a Fourth Amendment seizure because the objective facts would lead

any reasonable person in Mr. Richardson's position to believe he was no longer free to leave.[1]

To justify the seizure of Mr. Richardson, the conduct of Officer Guyer must next be tested for reasonableness. The officer must be able to point to specific and articulable facts giving rise to a reasonable suspicion that there is criminal activity afoot. *Terry v. Ohio, supra*; *State v. Little*, 116 Wn.2d 488, 495, 806 P.2d 749 (1991); *State v. White*, *supra*. A person's presence in a high crime area does not, by itself, give rise to a reasonable suspicion to detain him. *State v. Ellwood*, 52 Wn. App. 70, 74, 757 P.2d 547 (1988); *accord, State v. Dudas*, 52 Wn. App. 832, 835, 764 P.2d 1012 (1988), *review denied*, 112 Wn.2d 1011 (1989). Nor does an individual's mere proximity to others independently suspected of criminal activity justify an investigative stop; the suspicion must be individualized. *State v. Thompson*, 93 Wn.2d 838, 841, 613 P.2d 525 (1980). Officer Guyer may well have had a reasonable suspicion Mr. Gonzales was engaged in criminal activity, but he did not articulate objective facts warranting a reasonable suspicion of Mr. Richardson. At the time of the seizure, Officer Guyer knew only that Mr. Richardson was in a high crime area, late at night, walking near someone the officer suspected of "running drugs". He had not heard any conversation between the men and had not seen any suspicious activity between them. Officer Guyer's detention of Mr. Richardson was an unreasonable seizure in violation of his constitutional rights. Because the seizure was improper, the evidence seized in the subsequent search must be suppressed. *State v. Kennedy*, 107 Wn.2d 1, 4, 726 P.2d 445 (1986). The trial court's conclusion otherwise was error.

---

[1] At the suppression hearing, the officer testified the men remained free to leave; however, he admitted he never informed them of that fact. Officer Guyer's unexpressed subjective intent to permit the men to walk away is immaterial on the issue of whether a reasonable person would feel free to leave. *State v. Ellwood*, 52 Wn. App. 70, 73, 757 P.2d 547 (1988) (citing *Mendenhall*, 446 U.S. at 554 n.6).

Mr. Richardson's conviction is vacated and the case is dismissed.

MUNSON and THOMPSON, JJ., concur.