# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

CHRISTOPHER JOHNSON,

Appellant.

No. 77922-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: October 7, 2019

MANN, A.C.J. — Christopher Johnson was convicted at a bench trial of possession of a controlled substance while on community custody. On appeal, Johnson contends the trial court erred in admitting his custodial statement because the State failed to prove he was fully advised of his Miranda[1] rights. Johnson further contends that the trial court erred when it failed to suppress evidence following an unconstitutional seizure. Because the State proved by a preponderance of the evidence that the police properly read Johnson his rights from a department-issued card, and because the investigatory stop that culminated in Johnson's arrest on an outstanding warrant was supported by reasonable suspicion, we affirm.

_____

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

I.

On May 30, 2016, at approximately 8:00 p.m., Sergeant Marcus Dill of the Snohomish County Sheriff's Office was waved down by a woman who asked him to investigate abandoned cars in an area near Mariner High School in Everett. While running checks on license plates and tagging cars with 24-hour impoundment notices, Sergeant Dill noticed a black Audi with no license plates. Upon closer inspection, he observed that the Audi had a temporary trip permit taped to the rear window. He was aware that a similar vehicle was recently involved in an eluding incident with other officers in his department. He believed the driver in that incident was Aaron Quinn, an individual he knew from prior contacts. Sergeant Dill knew Quinn had a "history with weapons."

As Sergeant Dill approached the vehicle, he observed a man and woman asleep in the passenger seat. He also noticed a glass pipe on the center console which he believed was the type used for drug consumption. He did not recall whether the pipe had any residue indicating it had been used. When he knocked on the window with his flashlight, the woman woke up, grabbed the pipe, and tossed it in the back seat.

Sergeant Dill instructed both individuals to get out of the vehicle. He thought the man looked familiar, but was not initially certain of the man's identity. He knew the man was not Quinn. Sergeant Dill placed the man in handcuffs and moved him to the rear of the vehicle. He did not handcuff the woman. Around the same time, Deputy Nathan Smith arrived to assist.

Sergeant Dill determined that the Audi was not stolen and that it was registered to Quinn's mother. He then asked both individuals to identify themselves. The woman

2

identified herself as Dallas Simpson. The man initially provided a false name, but eventually identified himself as Christopher Johnson. This allowed Sergeant Dill to discover that Johnson had an outstanding warrant for his arrest.

Sergeant Dill arrested Johnson on the warrant and, reading from a card issued by the Washington State Criminal Justice Training Commission, advised him of his Miranda rights. Sergeant Dill then searched Johnson and found two balloons containing a substance he believed to be heroin. Sergeant Dill asked Johnson about the balloons, and Johnson stated that they contained "brown." Sergeant Dill recognized that term as street slang for heroin. Johnson was also found in possession of a plastic bag filled with a material that was later determined to be heroin.

Following Johnson's arrest, police impounded the Audi and obtained a warrant to search it. Items recovered from the search included a cloth bag on the driver's seat containing 123 grams of heroin and 12 grams of methamphetamine, and a purse containing Simpson's identification and large amounts of cash in denominations of $20 or less. At trial, Simpson testified for the defense that the drugs in the Audi belonged to her and that Johnson did not participate in her drug selling enterprise. She explained that Johnson planned to turn himself in on his warrants, so she gave him heroin for use while in jail.

The State charged Johnson with one count of possession of a controlled substance (heroin and methamphetamine) with intent to manufacture or deliver, committed while on community custody. At a CrR 3.5 hearing, the trial court ruled that Johnson was properly advised of his Miranda rights and that his statement identifying the content of the balloons as "brown" was admissible. At a CrR 3.6 hearing, the trial

3

court ruled that police had reasonable articulable suspicion to detain Johnson and that the evidence found on Johnson's person following his arrest was admissible.

Following a bench trial, the court found Johnson guilty of possession of a controlled substance committed while on community custody, but not guilty of possession with intent to deliver. The court imposed a low-end standard range sentence of 12 months and one day. Johnson appeals.

II.

Johnson argues that the trial court erred in denying his CrR 3.5 motion to suppress his post-Miranda statement that the balloons found in his pocket contained "brown." The trial court's legal conclusions regarding the adequacy of Miranda warnings are issues of law reviewed de novo. State v. Mayer, 184 Wn.2d 548, 555, 362 P.3d 745 (2015).

"Miranda warnings were developed to protect a defendant's constitutional right not to make incriminating confessions or admissions to police while in the coercive environment of police custody." State v. Heritage, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). Without Miranda warnings, statements made during custodial interrogation are presumed involuntary. State v. Sargent, 111 Wn.2d 641, 647-48, 762 P.2d 1127 (1988). "The State bears the burden of showing a knowing, voluntary, and intelligent waiver of Miranda rights by a preponderance of the evidence." State v. Athan, 160 Wn.2d 354, 380, 158 P.3d 27 (2007). Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding. State v. Halstien, 122 Wn.2d 109, 129, 857 P.2d 270 (1993).

Johnson asserts that Sergeant Dill's testimony that he read Johnson his rights from "the normal Washington State Criminal Justice Training Commission Miranda warning card" was legally insufficient to prove that the required Miranda warnings were in fact given. He contends that it is not possible to determine whether the card properly stated all Miranda warnings because Sergeant Dill did not read its contents into the record and the State did not enter the card into evidence. We disagree. Sergeant Dill testified that he advised Johnson of the required Miranda warnings and that he did so using a standard warning card that he carries in his patrol kit. The record contains no evidence that the warnings printed on this card are inadequate. This evidence weighs in favor of an inference that Johnson more likely than not received the required warnings and that his subsequent statement was voluntary.

Moreover, even if the statement was admitted in error, any error in considering it was harmless beyond a reasonable doubt. Admission of a confession obtained in violation of Miranda is subject to harmless error analysis. State v. Reuben, 62 Wn. App. 620, 626-27, 814 P.2d 1177 (1991). "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." State v. Guloy, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). The reviewing court looks only at the untainted evidence to determine if it is so overwhelming that it necessarily leads to a finding of guilt. Guloy, 104 Wn.2d at 426.

Here, Johnson's statement that the balloons contained "brown" had no impact on his conviction for possession of a controlled substance. Johnson was found in possession of two balloons and one plastic bag containing a total of approximately 86

grams of material. The state crime lab determined that the plastic bag contained approximately 17 grams of heroin, but it did not test the contents of the balloons. The court concluded that there was reasonable doubt as to whether the balloons contained a controlled substance. And the court specified that it found Johnson guilty of possessing "approximately 17 grams of heroin." It is thus readily apparent that Johnson's conviction was based on the 17 grams of heroin found in the plastic bag, not on the untested contents of the balloons. The court would have reached the same result even if Johnson's statement regarding the contents of the balloons had been excluded.

III.

Johnson argues that the trial court erred in denying his CrR 3.6 motion to suppress the items found in his pockets because it was the fruit of an unlawful seizure. We review a trial court's decision on a CrR 3.6 motion to suppress to determine whether the court's findings are supported by substantial evidence and whether those findings support the conclusions of law. State v. Cole, 122 Wn. App. 319, 322-23, 93 P.3d 209 (2004). Unchallenged findings of fact are verities on appeal. State v. Acrey, 148 Wn.2d 738, 745, 64 P.3d 594 (2003). We review conclusions of law de novo. State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).

"Generally, under the Fourth Amendment to the United States Constitution and article I, section 7 of Washington's constitution, an officer may not seize a person without a warrant." State v. Fuentes, 183 Wn.2d 149, 157-58, 352 P.3d 152 (2015) (citing Garvin, 166 Wn.2d at 248). A warrantless search is per se unreasonable unless the search falls within a specific exception to the warrant requirement. State v. Ross,

6

141 Wn.2d 304, 312, 4 P.3d 130 (2000). The State has the burden of proving that an exception applies. State v. Vrieling, 144 Wn.2d 489, 492, 28 P.3d 762 (2001). "When an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed." State v. Ladson, 138 Wn.2d 343, 359, 979 P.2d 833 (1999).

A Terry[2] investigative stop is an exception to the warrant requirement. Acrey, 148 Wn.2d at 746. "The purpose of a Terry stop 'is to allow the police to make an intermediate response to a situation for which there is no probable cause to arrest but which calls for further investigation.'" State v. Moreno, 173 Wn. App. 479, 492, 294 P.3d 812 (2013) (quoting State v. Armenta, 134 Wn.2d 1, 16, 948 P.2d 1280 (1997)). To conduct a valid Terry stop, the investigating officer must have "reasonable suspicion of criminal activity based on specific and articulable facts known to the officer at the inception of the stop." Fuentes, 183 Wn.2d at 158. In determining whether the officer had reasonable suspicion, we consider the totality of the circumstances known to the officer at the inception of the stop, including "the officer's training and experience, the location of the stop, the conduct of the person detained, the purpose of the stop, and the amount of physical intrusion on the suspect's liberty." Id. (citing Acrey, 148 Wn.2d at 746-47. "If the stop exceeds these limitations, it can be justified only by a showing of probable cause." State v. Mitchell, 80 Wn. App. 143, 145, 906 P.2d 1013 (1995). The showing necessary to meet the reasonable suspicion standard for a Terry stop is much lower than the showing necessary to meet the probable cause standard for a search warrant. State v. Lee, 147 Wn. App. 912, 921-22, 199 P.3d 445 (2008).

---

[2] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Johnson argues that Sergeant Dill lacked reasonable suspicion of criminal activity to support a valid Terry stop. During this seizure, Sergeant Dill asked Johnson to identify himself, which led to the discovery of a warrant for Johnson's arrest. Johnson therefore asserts that evidence discovered in the subsequent search of his person should have been suppressed as the fruit of the original unlawful seizure.

Although this is a relatively close call, we agree that Sergeant Dill had a reasonable and articulable suspicion to initiate a brief investigative Terry stop. Sergeant Dill noticed a black Audi while responding to a citizen complaint regarding abandoned vehicles. The car initially drew his attention because it did not have license plates and because he recognized it as being associated with a recent eluding incident involving Quinn, an individual known to carry weapons. Although Sergeant Dill knew Quinn had been arrested in that incident, he did not know whether Quinn was still in custody. When Sergeant Dill observed the man and woman sleeping in the car, he did not know their identities or whether they were connected with the recent eluding incident. Sergeant Dill then observed a glass pipe on the center console of the car within reach of the man and woman. The pipe was consistent in his experience with the type used to ingest illegal drugs. When he knocked on the window, the woman woke up, grabbed the pipe, and threw it in the back seat.

Johnson contends that possession of a glass pipe, without evidence of use, does not justify a Terry stop because mere possession of drug paraphernalia is not a crime. Johnson notes that there is no evidence that the paraphernalia had ever been used. Sergeant Dill did not recall whether the pipe showed any residue or other evidence of use. Johnson therefore contends that Sergeant Dill lacked reasonable suspicion of

8

criminal activity. We disagree. When Sergeant Dill knocked on the car window, Simpson grabbed the pipe and threw it in the back seat. Sergeant Dill's observation of the glass pipe in plain view, together with Simpson's action in attempting to hide it, supported reasonable suspicion under the totality of the circumstances that the occupants of the car were involved in a crime such as possession of a controlled substance.

Johnson further contends that his presence in the car near the pipe did not provide individualized suspicion that he possessed the pipe for any criminal purpose. We disagree. One can be in joint constructive possession of contraband jointly with another person. State v. Morgan, 78 Wn. App. 208, 212, 896 P.2d 731 (1995). In Morgan, police noticed two men standing by a truck in a public park with water, aluminum foil, and white powder laid out on the hood. Id. at 210. The offer recognized these items as paraphernalia for using cocaine. Id. The officer arrested the driver and the passenger. On appeal, the passenger argued that the officer lacked probable cause to arrest him for joint constructive possession of drug paraphernalia. Id. at 211. In rejecting this argument, the court noted that the contraband was located in plain view of both the passenger and the driver, and that both had equal access to the items. Id. at 213. Here, similarly, both individuals in the car had equal access to the glass pipe, which was located in plain view on the center console. It was reasonable to infer joint constructive possession under the totality of the circumstances.

Johnson likens his case to State v. Grande, 164 Wn.2d 135, 187 P.3d 248 (2008), but that case is distinguishable. The Grande court held that the smell of marijuana emanating from a vehicle, without more, does not establish probable cause to

arrest all occupants of the vehicle and conduct a search incident to arrest. Id. at 138. In so holding, the court emphasized that the officer had probable cause to search the vehicle, but not to immediately arrest the occupants without individualized probable cause. Id. at 146-47. Here, in contrast, Sergeant Dill did not arrest Johnson based on the glass pipe. Rather, he conducted an investigatory stop based on reasonable suspicion.

Johnson, relying on State v. Richardson, 64 Wn. App. 693, 825 P.2d 754 (1992) and State v. Doughty, 170 Wn.2d 57, 239 P.3d 573 (2010), argues that Simpson's act of throwing the pipe cannot be imputed to him for purposes of establishing reasonable cause for an investigative stop. In Richardson, the court found a Terry stop improper based on the defendant's presence in a high crime area late at night with an individual suspected of "running drugs." 64 Wn. App. at 697. In Doughty, the court found a Terry stop improper based on defendant's brief visit to a suspected drug house at 3:20 a.m. 170 Wn.2d at 61. Here, Sergeant Dill's reasonable suspicion to conduct an investigative stop was based on more than presence in a high crime area or being with someone known to sell drugs. It was based on Johnson's joint constructive possession of the glass pipe. Johnson cites no case law for the proposition that police cannot consider the actions or words of another individual involved at the scene as one of the factors to be considered in determining whether there is reasonable suspicion of criminal activity.

Lastly, Johnson asserts that even if Sergeant Dill had reasonable suspicion to support a Terry stop, reversal is required because handcuffing Johnson amounted to a custodial arrest without probable cause. We disagree. It is undisputed that this act

10

constituted a seizure. But "[n]ot every seizure is an arrest." State v. Salinas, 169 Wn. App. 210, 217, 279 P.3d 917 (2012). A custodial arrest occurs if a reasonable detainee under the circumstances would consider himself or herself under full custodial arrest. State v. Glenn, 140 Wn. App. 627, 638, 166 P.3d 1235 (2007). Factors to be considered include whether the suspect is handcuffed, placed in a patrol vehicle for transport, or told that he or she is under arrest. Salinas, 169 Wn. App. at 218. Here, Sergeant Dill handcuffed Johnson at the inception of the stop. But he did not place Johnson in a patrol car or inform him that he was under arrest until after he discovered Johnson's outstanding warrant.

Moreover, we agree with the State that Sergeant Dill acted reasonably by handcuffing Johnson for safety purposes at the inception of the investigatory stop. "The permissible scope of an investigatory stop is determined by all the circumstances facing the officer at the time of the stop." Mitchell, 80 Wn. App. at 146. While not typically part of a Terry stop, police may employ intrusive measures such as drawn weapons or handcuffs for safety purposes where a reasonable person would believe that he or others are in danger. State v. Williams, 102 Wn.2d 733, 740 n.2, 689 P.2d 1065 (1984); Mitchell, 80 Wn. App. at 146; State v. Belieu, 112 Wn.2d 587, 602, 773 P.2d 46 (1989). Factors that bear on the issue of reasonableness include the nature of the crime under investigation, the degree of suspicion, the physical location of the stop, the time of day, and the reaction of the suspect to the police. Belieu, 112 Wn.2d at 600. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and

rapidly evolving—about the amount of force that is necessary in a particular situation."

Graham v. Connor, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

Here, Sergeant Dill testified on direct examination that he placed Johnson in handcuffs for safety reasons during the investigation:

> Q. And why did you place him in handcuffs?
> A: Initially, I was by myself. There was -- there's a couple -- based on the previous suspect and who the vehicle belonged to, who I believed it belonged to, there were several factors involving his criminal history and weapons. And at first, that was kind of my intent was just to detain the parties until I could figure out who they were and until I had another unit come and it would be a little more safe.

Sergeant Dill further testified on cross examination:

> Q. Did you handcuff him because you thought he was Quinn or did you handcuff him because of the drug paraphernalia in the car?
> A. Because of the drug paraphernalia, and the facts that the car had been involved in a pursuit and Mr. Quinn's history with weapons and so forth.

After hearing the parties' arguments, the trial court stated:

> [B]ecause for purposes of me determining whether or not this was a Terry stop or an arrest, what was important to me was to find out factually why he placed him in handcuffs. And his statement that he was concerned about his safety, he was the only one there, that the vehicle was associated with somebody who had a history of gun ownership. He recognized this person somewhat but wasn't sure what it was. I think that all of that, for me, from the totality of circumstances is such that it was not a formal arrest.

The record shows that Sergeant Dill was patrolling alone when he encountered the Audi at around 8:00 p.m. in an area where abandoned cars were frequently dumped. He recognized the Audi as being associated with a recent eluding incident involving an individual known to carry weapons. The identity of the individuals in the Audi was unknown. We also note that Sergeant Dill did not search Johnson's person until after he arrested Johnson on the outstanding warrant. Accordingly, we conclude that

12

Sergeant Dill did not effect a custodial arrest by handcuffing Johnson at the inception of the investigative stop.

Affirmed.

_____

WE CONCUR:

_____          _____